CASE 2—PETITION EQUITY—DECEMBER 8.

## Louisville and Portland Railroad Company vs. Louisville City Railway Company.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A railroad company, by its charter, having a right to one railroad only, but the choice of three routes, cannot complain that one of those routes, which it did not adopt, was used by another company.

2. An amendment to a railroad charter is as much a part of it as if incorporated in the original grant.

3. A provision in a railroad charter that no other *railroad* should be constructed between two named points in a city, cannot be construed as prohibiting the construction of street *railways* anywhere within the city for the convenience of its inhabitants.

4. In a technical sense, a street rail*way* is not a rail*road*, and, in such contra-distinctive sense, the term "rail*road*" was used in the charter.

5. A proviso in the charter of a city railway company that its railways shall not "affect the legal rights of any other companies," only protects the latter in the use of their roads and the exclusive right to railroad profits, and does not prohibit the construction of a street *railway*.

6. Monopolies are odious, and generally unjust and detrimental, and are never implied from a simple grant of a franchise not necessarily of an exclusive character.

G. A. & I. CALDWELL and C. RIPLEY for appellants.

J. S. PIRTLE and JNO. ROBERTS, for appellees, cited 11 *Peters*, 420; 13 *Howard*, 71; 17 *Conn.*, 454; 6 *Paige*, 554; 1 *Ohio St. Rep.*, 622; 21 *Vt.*, 591; 2 *Met.*, 165.

W. F. Barrett, on same side, cited 1 *vol. Am. R. R. Cases*, 237; 2 *Gray*, 1; *Const. of Ky.*, sec. 37, art. 2; 2 *Met.*, 219; 2 *Bibb*, 96.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The city of Louisville, by an ordinance of the 31st of May, 1837, conceded to the Lexington and Ohio railroad company, incorporated by an act of January the 27th, 1830, the right to construct its road on High street from Louisville to its terminus on the Ohio river at Portland, then not incorporated with the city as a portion of it; and afterwards, in the same way, in consideration of $6,000 in stock in the road, the city granted to the company the right of way on the Portland avenue, which is about 200 yards south of High street and parallel therewith; and the company constructed its road on that avenue. After the completion of that section of the road, the State of Kentucky bought the entire road from Lexington to Portland, and, by an act of 1844, incorporated "*the Louisville* and Portland railroad company," for the exclusive use and benefit of the Blind Asylum, near Louisville; but that beneficent donation proving ineffectual for want of material means, the Legislature, by an act of January the 9th, 1852, authorized the beneficiary institution to obtain the requisite aid by such contract with others as it might choose to make. Under that authority, a contract was made with the appellants, Henderson and others, whereby the chartered rights of the institution in the road were transferred to this new company in consideration of its obligation to pay to the institution an annuity of $600; and that contract having been subsequently recognized by the Legislature, the appellant became a substituted corporation; and the council of the city of Louisville (then including Portland) having, in June, 1853, conceded to it, "*in addition*" to High street and Portland avenue, the right of way on Bank street, about 200 yards south of the avenue; it afterwards abandoned the tract on the avenue and constructed and equipped its road on Bank street, and put it in operation. In 1860, apparently to secure the interest of the asylum as a State beneficiary, the Legislature,

by an amendment of the charter, enacted that no other "*railroad*" than that of the appellant should be constructed between Twelfth street and Portland, and that any "*railroad*" that might be made east of Twelfth, in the city, should connect with the appellant's road on reasonable terms.

At the instance of the city of Louisville, several citizens were, by a legislative act of November 15th, 1864, incorporated as the Louisville City railroad company, for the purpose of supplying the citizens with the facilities of street rail*ways* wherever the city authorities might authorize them to be used with horse power only. Under that authority, this company constructed and put into running operation a street railway on Main street, from Beargrass to Twelfth street; and the city council having granted to this company the right of way on the Portland avenue from Twelfth street to Portland, it commenced the construction of its track on that avenue so as *not* to "connect" with the road of the appellant, who filed a petition for enjoining the appellee. The chancellor refused the injunction, and, after elaborate preparation by testimony and otherwise, dismissed the petition. That decretal order is now the subject of our revision.

The testimony, though various and conflicting, authorizes the deduction that public convenience would be promoted by some competition in railway facilities for transportation of persons between Twelfth street and Portland. But the appellant claims that its purchased right of way on Portland avenue cannot be legally taken away or obstructed, without "just compensation;" and, also, that its charter, as amended, entitles it, exclusively and inviolably, to all railway privileges between Twelfth street and Portland.

It is quite evident that its charter entitles the appellant to only one railroad—and it is equally evident, that, while it had the alternative right of way on either of three streets, it chose to adopt Bank street in lieu of Portland avenue, and thereby abandoned—as long at least as it shall use Bank street—all other ways; and, therefore, as it does not, in its petition or otherwise, indicate any disposition to abandon that and substitute any other street, Portland avenue, for all the purposes

of this litigation, must be treated as derelict and as open to all other uses as it would be had it never been dedicated to the abandoned use. Consequently, we can see no sufficient ground for the claim to compensation.

But the claim to an exclusive right to all railway privileges between Twelfth street and Portland presents a more doubtful, as well as more important question.

The amendatory act of 1860 must be considered as much a part of the appellant's charter as its incorporation in the original grant could have made it. And thus considering it, and especially in connection with the presumed purpose of the State to secure the annuity to a benevolent institution dependent on her patronage, we are of the opinion that, by the act of 1860, the Legislature intended to prevent any rail*road* competition with the appellant's road. But, nevertheless, we are also of the opinion that it was not the purpose of the Legislature to interdict street rail*ways* for the convenience of the property-holders and residents in the city of Louisville. A rail*road* is for the use of the universal public in the transportation of all persons, baggage, and other freight—a street rail*way* is dedicated to the more limited use of the local public for the more transient transportation of persons only, and within the limits of the city. In the technical sense, therefore a street rail*way* is not a rail*road*. And we presume that, in this contradistinctive sense, the term "rail*road*" was used in the appellant's charter as amended in 1860. A "*railroad*" and a "*street* railroad," or way, are, in both their technical and popular import, as distinct and different things as "*a road*" and "*a street*," or as "*a bridge*" and "*a railroad* bridge," and it has been authoritatively adjudged that the simple term "*bridge*" means a viaduct in a road dedicated to common use, and that the qualified phrase, "*railroad* bridge," means a viaduct constructed for the exclusive use of railroad transportation.

Moreover, as adjudged by this court, in the case of the Lexington and Ohio Railroad vs. Applegate (8*th Dana*, 289), the owners of ground on the streets of Louisville have an incidental right to the free use of the streets and to all usual

facilities for locomotive intercommunication thereon, and that this appurtenant privilege is inseparable from the property unless full compensation be made for the privation or obstruction of it. And the city itself, including all its inhabitants, ought never to be deprived of the common right of facilitating local intercourse by improving its streets and providing cheap and convenient means of internal transportation from place to place, whether those means be street omnibuses or street rail and cars—the only differences in these two modes favoring the latter as more safe, cheap, and convenient. We cannot, therefore, presume that the Legislature ever intended to deprive the State. and the city of the privilege of having street rail*ways* anywhere within the city limits. Such an unreasonable deprivation would be unnecessarily incompatible with the greatest prosperity of the city, and comfort and convenience of its inhabitants. If a charter of one street rail*way* in the city should prohibit any other such way, the prohibition could not be reasonably construed as intended to prevent the extension of the Frankfort and Louisville railroad from its present terminus in the city to Twelfth street, nor the construction and use of any other railroad through the city; and the only reason why, is, because a street railway is not, in either the popular or legislative sense, a "rail*road*." The same reason would equally apply conversely to the prohibition of any other "rail*road*" in the charter of the Louisville and Portland railroad.

The amendatory act of 1860, and a subsequent act *of the same session*, fairly and consistently interpreted and harmonized, seem to fortify this construction. By a provision in the first of these cotemporaneous enactments the Louisville and Portland company was authorized, with the consent of the city, and of the owners of ground on Main street, to extend *its* railroad up that street to Beargrass, and any other railroad company was granted the same privilege, on the same condition. Each railroad thus licensed was evidently (*ejusdem generis*) a contemplated link in a longer and continuous railroad for the transportation of all persons, baggage, and freight anywhere on the connected road, and not a mere street rail-

*way,* destined to a more ephemeral and circumscribed use in the city only, and neither intended nor adapted as a link in a railroad constructed for a more comprehensive and international use. And, consistently with this construction, and inconsistently with any other, the subsequent act of the same session authorized the city to construct street railways *anywhere within its limits,* including Portland—thereby showing that the railroads mentioned in the earlier enactment of 1860, and any other "rail*road*" prohibited by it, were not intended to embrace street railroads or ways.

We, therefore, feel authorized to conclude that the appellant's exclusive "railroad" privilege, as claimed under the act of 1860, does not exclude the rightful construction and use of the appellee's street railway on Portland avenue.

Nor does the undisputed fact that the appellant's profits will be essentially reduced, and, perhaps, even destroyed by the appellee's railway from Twelfth street to Portland, prove that the latter is an illegal encroachment on any of the guaranteed rights of the former. Such is often the inevitable effect of lawful competition for public patronage, and must, as often, be suffered for the common welfare and equal rights. We doubt not the mere constitutional power of the Legislature to make any such franchise exclusive. But, as monopolies are odious, and, generally, unjust and detrimental, they are never implied from a simple grant of a franchise not necessarily of an exclusive character. The appellant's right to. use its own road without intrusion on *it* or obstruction in the use of *it,* is thus necessarily exclusive.

But the appellee's Portland road does not encroach on, or obstruct, the appellant's road; nor can the proper and authorized use of the one interfere with the proper and authorized use of the other. The grant of the appellant's franchise did not *imply* a guarantee against any other and rival road, required by public interest and equality of popular privileges.

Its exclusive right results only from the express provisions of the amendatory act of 1860. And though we adjudge that the grant of railroad privilege to the appellant is thus constructively exclusive of the *same* rival privilege, yet, as

we also adjudge that the franchise granted to the appellee is not of the excluded class, therefore it will not encroach on any right guaranteed to the appellant, and should not, as a mere rightful rival, be enjoined.

But appellant contends that the appellee's charter does not authorize a street rail*way* from Twelfth street to Portland, because it provides that no such way shall " affect the legal rights of other companies." This *proviso* applies to both the Louisville and Portland railroad and the Frankfort and Louisville railroad; and the legal rights of the appellant which it contemplated and intended to guard were the unobstructed use of the Louisville and Portland rail*road*, and the exclusive right to rail*road* profits between Louisville and Portland. But if, as we adjudge, the appellee's street railway is not, in the legislative contemplation, a prohibited rail*road*, its construction and use cannot affect any of the legal and reserved rights of the appellant; and, therefore, the assumed ground is insufficient for limiting the appellee's chartered privilege to Twelfth street. The appellant has no legal right to a monopoly of transportation in any other mode than by rail*road* like that on Bank street, and operating in the same way, and to the same extent, including both persons and freight. Nor will the use of the appellee's railway on Portland avenue encroach on the appellant's road or obstruct the use of it in any lawful way, contemplated by its original or amended charter, or by the proviso in the appellee's charter. That proviso, therefore, does not prohibit the construction and use of the street rail*way* on Portland avenue, the appellee's chartered privilege extending, as it does, throughout the entire city with the concurrence of its municipal authorities.

If we are right in the distinction we make between a " railroad " and a " street railroad," or rather *way*, the " connection " required by the act of 1860 does not devolve, as a *legal* duty, on the appellee, but would apply only to such a railroad as that of the Frankfort and Louisville company, which, if ever extended from its present terminus to Twelfth street, would be bound to connect, by gauge and otherwise, with

the appellant's railroad, so as to have a continuous line of the same kind of railroad from Frankfort to Portland.

The result of the foregoing view is, that we cannot decide that the chancellor essentially erred.

Wherefore his judgment must be, and is, consequently, hereby affirmed.