27 So.2d 857

**HAMILTON v. CITY OF ANNISTON et al.**

**7 Div. 890.**

Supreme Court of Alabama.

Nov. 21, 1946.

W. D. DeBardelaben and Richard B. Emerson, both of Anniston, for appellees.

R. E. Jones, of Anniston, amicus curiae.

Ross Blackmon, of Anniston, and Horace C. Wilkinson, of Birmingham, for appellant.

STAKELY, Justice.

This is an appeal from the order of the equity court denying complainant's application for a temporary injunction. § 1057, Title 7, Code of 1940. The bill was filed by J. C. A. Hamilton (appellant) as a resident citizen and taxpayer of the City of Anniston, against the City of Anniston, a municipal corporation, J. F. King, President of the City Commission, and S. F. Street and A. H. Lee, Associate Members of the City Commission. The case was submitted in the lower court on the original verified bill of complaint, oral testimony and documentary evidence offered by the complainant and the stipulation of counsel.

The bill sets forth the minutes of certain proceedings of the City Commission of the City of Anniston, showing adoption of an ordinance. From this ordinance so adopted it appears that the City of Anniston owns and operates a hospital known as the Anniston Memorial Hospital and that it will be necessary for the city to construct a suitable building on the grounds of the hospital for use in connection with the administration and operation of the hospital. We quote from the ordinance as follows:

"Section 1. The Board of Commissioners (which is herein referred to as 'the board') of the City of Anniston (which is herein referred to as 'the city') in the State of Alabama has ascertained and determined that the following statements are true: In order to furnish appropriate offices, quarters, laboratories and equipment for use in the administration and operation of the Anniston Memorial Hospital, which is owned and operated by the city, and for use by the staff and nurses employed in the operation of said hospital, and for use by the Board of Health of the city, it will be necessary for the city to construct a suitable building on the grounds of said hospital, * * *."

It further appears from the ordinance that the estimated cost of the building has been ascertained to be $300,000, a sum which the city does not have presently available and will not have available for this purpose from its general revenues prior to completion of the project. It further appears from the ordinance that in order to finance the project the city is authorized to negotiate a temporary loan from T. U. Crumpton & Company in the sum of $300,000 to mature August 1, 1947, which shall be a general obligation of the City of Anniston. The details of the loan are provided for in the ordinance, including the form of the note, etc.

We also quote the following excerpts from the allegations of the bill:

"Fourth: Complainant avers that in conjunction with the execution of the said three hundred thousand dollar note of the City of Anniston, payable to T. U. Crumpton and Company on the first day of August, 1947, together with interest thereon at the rate of two and three-quarters per cent per annum and as a part of the plan

providing for the erection and equipment of what is called and designated by the terms of the said plan 'Doctors Building for the City of Anniston, Alabama, or Medical Arts Center,' it has been provided that there shall be issued a series of twenty-five year bonds of the City of Anniston, Alabama, bearing the rate of interest of two and one-quarter per cent, which bonds are to become the debt and unconditional binding obligations of the City of Anniston, said bonds to aggregate the sum of three hundred thousand dollars and to mature over a consecutive period of twenty-five years and to be secured by a pledge of the credit and faith of the City of Anniston, the proceeds of said bonds to be used to pay and discharge said note indebtedness * * *."

Further allegations regarding the issuance of bonds are not set out, because by stipulation it appears that no bonds have been issued and that no action has been taken by the city looking to the issuance of bonds. Accordingly we do not regard the issuance of bonds as a matter now involved in the litigation.

"Sixth: Complainant further avers that the erection of said building is proposed to be made upon a site which now constitutes a part of the premises of the Anniston Memorial Hospital; that to erect said structure upon said premises would serve to create a lien against said Memorial Hospital premises which are now owned by the City of Anniston and that the incomes accruing to the City of Anniston from the operations of the said Doctors Building or Medical Art Center are to be merged and combined with any income accruing from the proposed Medical Art Center, thereby burdening the income from said Memorial Hospital with the further and additional burden to that which it now bears as security for said bonds. * * *."

"Eighth: Complainant further avers that the erection and the construction of the said Medical Arts Building at the present time and under the present conditions that prevail with reference to the hospital facilities of the City of Anniston will be most improvident and unnecessary in this: * * *

"(D) The erection of said building is contrary to the Constitution and laws of the state of Alabama in that to do so would constitute 'Class Legislation,' it being true that the avowed purpose and ulterior motives of the City Commission is to provide office space for a special group of professional men, to do which constitutes an illegal exercise on the part of the City of Anniston of governmental functions.

"(E) Furthermore, even though all the physicians and dentists now residing in and practicing their professions in the City of Anniston should rent offices in the proposed Medical Arts Building the total rental received therefrom would be insufficient to liquidate a three hundred thousand dollar debt.

"(F) Furthermore, none of the city authorities of Anniston, Alabama, have received or contracted with a single physician or dentist to lease them space in said proposed structure. There are only at the present time —— physicians in Anniston and 15 dentists in the City of Anniston. Hence the conclusion to be reached is, therefore, inevitable that the proposed erection of said building is not only illegal and contrary to law, but is improvident and an unjust and illegal invasion of the rights of the taxpayers of the City of Anniston. The statements set forth in Section One of the resolution passed by the Board of Commissioners of the City of Anniston, Alabama, to the effect that it had ascertained and determined the following statement of fact to be true, towit, 'In order to furnish appropriate offices, quarters, laboratories and equipment for use in the administration of the Anniston Memorial Hospital owned and operated by the city and for use by the staff and nurses employed in the operation of said hospital and for use of the Board of Health of the City, it will be necessary for the city to construct a suitable building on the grounds of said hospital, the estimated cost of which is ascertained to be three hundred thousand dollars,' are at variance with the true facts and are untrue."

The bill further alleges that a contract has been made and entered into by and between Dethlefs and Hannon, contractors, and the City of Anniston, for the construc-

tion of the building. The alleged contract is set out in the bill and is alleged to contain, among other provisions, the following:

"This agreement made the 7th day of August in the year Nineteen Hundred and Forty-six, by and between Dethlefs and Hannon, hereinafter called the contractor, and the City of Anniston, hereinafter called the owner, WITNESSETH, that the Contractor and the Owner, for the considerations hereinafter made, agree as follows:

"Article 1. Scope of the work—The Contractor shall furnish all of the material and perform all of the work upon all the Drawings and described in the Specifications entitled 'Doctors Building for City of Anniston, Alabama, Southeast Corner Leighton Avenue and 10th Street,' excepting Elevators and Elevator Doors as specified under Section 17 of the specifications, pages 40 and 47, which are not a part of this Contract. * * *.'"

"Article 6. The Contract Documents— The general conditions of the Contract, the specifications and the Drawings, together with this agreement, form the Contract, and they are as fully a part of the Contract as if hereto attached or herein repeated. The following is an enumeration of the Specifications and Drawings:

"Specifications bearing the title 'Doctors Building for City of Anniston, Alabama, Southeast Corner Leighton Avenue and 10th Street,' including General Conditions and pages No. One (1) through Sixty-eight (68), excepting pages Forty (40) through Forty-seven (47).

"Drawings One Through Fourteen, S–1 through S–1 and M–1 through M–8, bearing the title 'Commission No. 224, Doctors Building, Southeast Corner Leighton Avenue and 10th Street,' Anniston Alabama. * * *.'"

Injunction is sought to prevent disbursement of the proceeds of the temporary loan of $300,000 and construction of the building described in the bill of complaint. It is conceded by all that there is no fraud or corruption on the part of the city officials.

■■ Our attention is directed by counsel for appellee to the fact that neither T. U. Crumpton & Company, the alleged lender of the temporary loan, nor Dethlefs & Hannon, the alleged contractors for the construction of the building, have been made parties to the suit. It must be conceded that these are persons whose rights will be directly and necessarily affected by final decree and are, therefore, materially interested in the subject-matter of this suit. Travelers' Fire Ins. Co. v. Young, 225 Ala. 671, 145 So. 140. However, since the lower court denied the application for temporary injunction, the point is not important on this appeal, unless we should undertake to affirm the lower court on the theory that it should not have rendered the decree in favor of complainant because of the absence of necessary parties or unless we undertake to render a decree here granting the application for temporary injunction. We shall take neither position because for reasons which will hereinafter appear, we think the case should be tried again in the lower court. The decree of the lower court shows that temporary injunction was denied after consideration of the evidence before the court and not because of lack of necessary parties. However, in order that there be no misunderstanding, if we thought that temporary injunction should now be granted here, we would not be precluded from such decree by the absence of necessary parties, because the case is not here for final decree on the merits nor is it here on ruling on demurrer. We expressly held on rehearing in the case of Baisden v. City of Greenville, 215 Ala. 512, 111 So. 2, and later approved the holding in Turnipseed v. Blan, 226 Ala. 549, 148 So. 116, that we would not ex mero motu notice lack of necessary parties in a situation similar to the situation now before us.

■ Section 469, Title 37, Code of 1940, provides as follows:

"All cities and towns of this state shall have the power * * *; to own, establish, maintain and regulate public hospitals, and to purchase and provide for any and all things which may be deemed advisable or necessary thereto, * * *."

It is clear, therefore, that municipalities in this state have the right to own and maintain public hospitals. See also § 495,

Title 37, Code of 1940 and §§ 189 and 190, Title 22, Code of 1940.

It is equally clear that a municipality is not authorized without specific statutory authority to construct with municipal funds a building for use in part by doctors for office space in their private practice. City of Bessemer v. Huey, 247 Ala. 12, 22 So.2d 325; City of Eufaula v. McNab, 67 Ala. 588, 42 Am.Rep. 118; McQuillin Municipal Corporations (2d Ed.) Vol. 3, p. 1045. But does the language of § 469, Title 37, Code of 1940, supra, give specific authority to a municipal corporation to erect a building with municipal funds for use in part by doctors for office space in their private practice? We do not think so because the municipal authorities may not follow mere whim or caprice in deciding what is advisable or necessary but such discretion is necessarily limited to those things which have a reasonable relation to a public hospital. Town of Greensboro v. Ehrenreich, 80 Ala. 579, 2 So. 725, 60 Am.Rep. 130. We readily agree that "appropriate offices, quarters, laboratories and equipment for use in the administration and operation of the hospital, which is owned and operated by the city, and for use by the staff and nurses employed in the operation of the hospital and for use by the board of health of the City," as set forth in the ordinance adopted by the city which is embodied in the bill of complaint, are things which can be reasonably related to a public hospital and which the municipal authorities would have the right and power to consider advisable and necessary. But a building for use by doctors for office space in their private practice, in our judgment, has no such reasonable relation and we will not read such a project into the statute by mere construction.

"All contracts, therefore, which are unauthorized by these principles are ultra vires, and impose no legal liability upon the corporations which purport to be bound by them. This is conceded to be a most salutary principle, and one of transcendent importance to the protection of the citizen against exhorbitant and unauthorized taxation, imposed for ends entirely foreign to legitimate governmental purposes. 1 Dillon on Mun. Corp. § 55; § 381, note 2. To such

an extent is this true, that the law rather favors the application of the doctrine of ultra vires to municipalities and counties, which are invested with civil, police and political functions, and in case of any ambiguity or doubt arising out of terms used in the charter, they are strictly construed against the existence of such power, and are resolved by construction in favor of the public. * * *." City of Eufaula v. McNab, 67 Ala. 588, 590, 42 Am.Rep. 118.

This brings us to the question which we must decide which is whether complainant has prima facie brought his case within the rule that a municipality may not, without specific statutory authority, construct with municipal funds a building for use in part by doctors for office space in their private practice. The right to temporary injunction does not depend on any advance finding for complainant on the merits. Odoms v. Woodall, 246 Ala. 427, 20 So.2d 849; Berman v. Wreck-A-Pair Bldg. Co., 234 Ala. 293, 175 So. 269. It is not necessary that complainant must present a case which will certainly entitle him to a decree upon a final hearing for he may be entitled to temporary injunction though his right to relief may ultimately fail. If the bill clearly shows a substantial question to be decided, a temporary injunction to preserve the status quo is in order. Glass v. Prudential Ins. Co. of America, 246 Ala. 579, 22 So.2d 13; Coxe v. Huntsville Gaslight Co., 129 Ala. 496, 29 So. 867.

The bill sets forth the ordinance adopted by the city commission which authorizes the construction of a suitable building on the grounds of the hospital to be used for purposes set forth in the ordinance. According the ordinance the presumption of validity which we should give it (43 C.J. p. 570), we think that the ordinance is a valid ordinance, because appropriate offices for use in administration and operation of the hospital will be construed to mean offices allowed by law, there being nothing in the ordinance to show the contrary. But the bill then shows that the contract made in pursuance of the ordinance between the city and the contractors for the construction of the building designates the project as "Doctors Building". We think that the words "Doctors Building" should be con-

strued in their popular sense, the plain sense in which the people generally understand them. Harrison v. The State, 102 Ala. 170, 15 So. 563. This means a building devoted to the use of doctors in their private practice. Accordingly the bill in substance shows that the contract made pursuant to the ordinance purports to be beyond the terms of the ordinance and accordingly ultra vires. Authorities supra. Or stating the situation in another way, the contract purports to be void because it appears to be beyond the pale of corporate authority. Cleveland School Furniture Co. v. City of Greenville, 146 Ala. 559, 41 So. 862; City Council of Montgomery, et al. v. Barnett, et al., 149 Ala. 119, 43 So. 92; Town of Coffee Springs v. Glover, 10 Ala.App. 475, 65 So. 440; Garner v. State, 229 Ala. 600, 158 So. 546.

In order to show the nature of work as contemplated under the contract, complainant called Robert W. Dethlefs, one of the contractors enagaged to build the Doctors' Building, and had him identify the plans and specifications which were offered in evidence. An effort was made to have the witness point out on the plans the amount of space in the building that had been allocated to office space for use by physicians. Objection was sustained to the proffered plans and specifications and the testimony sought. The court excluded this testimony on the theory that the recitals in the resolution were conclusive and would not admit any evidence to show what part of the building was to be used for private offices or what use was to be made of the building other than that described by the ordinance itself. In these rulings we think the court was in error. Authorities supra.

The contract was executed in the name of the City of Anniston by the president of the city commission. As long as the city commissioners acted within the limits of their power and authority their discretion will not be questioned but if in truth they went beyond their power and authority there is no room for discretion and their actions are invalid. City of Bessemer v. Huey, 247 Ala. 12, 22 So.2d 325. On the hearing of the application for a temporary injunction there is nothing to show any answer or denial of the city and no testimony was offered by the city except the understanding under the stipulation as to the bonds which has been referred to.

It results that the judgment of the lower court is reversed and the cause is remanded to the end that the court, under the rules herein laid down, may ascertain the true nature of the project sought to be constructed pursuant to the ordinance and under the contract, and then make its order accordingly.

Reversed and remanded.

All the Justices concur.