46 So.2d 500

**PULLMAN–STANDARD CAR MFG. CO. v. STATE.**

3 Div. 534.

Supreme Court of Alabama.
May 18, 1950.

E. Grant Fitts and White, Bradley, Arant & All, Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Gardner F. Goodwyn, Jr., Asst. Atty. Gen., for the State.

STAKELY, Justice.

The Pullman-Standard Car Manufacturing Company brings this appeal to this court

from a final decree of the Circuit Court of Montgomery County, in Equity, upholding, except as hereinafter noted, a final assessment against appellant made by the State Department of Revenue. The assessment is for use taxes based upon sales of electric railway passenger coaches by appellant to Birmingham Electric Company during the period from February 1st, 1947 to April 30, 1947, inclusive. The equity court affirmed the assessment made by the State Department of Revenue in all respects except that no penalty was allowed, with the result that the appeal here is from the final decree of the lower court upholding and affirming the final assessment in the amount of $24,962.28.

The State demurred to the Bill of Complaint of The Pullman-Standard Car Manufacturing Company, filed in the equity court. The demurrer was overruled and thereupon the State filed an answer. The only real issue made by the pleadings is whether the electric railway passenger coaches involved in the proceedings are "railroad cars" within the meaning of subsection (n), Section 789, Title 51, Code of 1940, which is as follows: "The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article. * * * (n) Railroad rails, railroad cars and vessels and barges of more than fifty tons burden, when purchased from the manufacturers or builders thereof. * * *."

The Pullman-Standard Car Manufacturing Company is a corporation organized under the laws of Delaware, with its principal place of business in Chicago, Ill. It has a plant and place of business in Worcester, Massachusetts, and also a plant and place of business in Jefferson County, Alabama. The Birmingham Electric Company is an Alabama corporation with its principal place of business in the City of Birmingham, Alabama. During the period from February 1, 1947 to and including April 30, 1947, appellant sold and delivered to Birmingham Electric Company the 48 electric railway passenger coaches involved in this case. These electric railway passenger coaches were shipped by appellant from its plant at Worcester, Massachusetts, to Birmingham Electric Company at Birmingham, Alabama.

A considerable amount of testimony was introduced. There is no need to set it out in detail, but it has been carefully considered, including a picture of one of the cars, all of which are alike, and pictures of the tracks of Birmingham Electric Company. We consider it clear that these passenger coaches are what are commonly known as street cars or street railway cars. They are electrically propelled and cannot operate on the line of a railroad unless there was constructed an overhead trolley connection and the rails were "bonded". The bonding of rails is the connecting of them in order that an electric current may pass through them. The proof shows that these railway passenger coaches were built so that they could be operated over a so-called standard guage railway or railroad, that is a guage common to all American railroads or railways. The proof further shows that the Birmingham Electric Company has over 100 miles of rail system with about 20 miles outside the City of Birmingham. The rail system of the Birmingham Electric Company connects the City of Birmingham with several separate incorporated cities, such as the City of Bessemer, the City of Tarrant City, the City of Fairfield, etc. But the cars involved in this litigation are not used on the run to Bessemer, Tarrant City or Fairfield. The proof shows that standard steam railroad cars or freight cars, including flat cars and gondolas, are from time to time operated on the system of Birmingham Electric Company for hauling poles, sand, scrap iron etc. for the use of Birmingham Electric Company, but the rail system of Birmingham Electric Company can accommodate a standard railroad train at only normal switching and slow speeds and its tracks are not banked so as to carry a steam locomotive with work cars at 50 miles an hour. The bridges of Birmingham Electric Company system are not strong enough to carry the weight of a mainline locomotive with a string of loaded box cars.

In summary we think that the proof as well as the pleading presents the legal

question as to whether street cars or street railway cars are railroad cars within the meaning of the foregoing exemption.

 Counsel have furnished much authority both for and against the proposition that railroad cars include street cars. There is nothing in the statute which gives a guide to its meaning. So in addition to the principle that exemptions from taxation are strictly construed against the taxpayer and in favor of the state, Title Guarantee Loan & Trust Co. v. Hamilton, 238 Ala. 602, 193 So. 107; State v. Prætorians, 226 Ala. 259, 146 So. 411, we turn to a generally accepted canon of statutory construction which is that where there is nothing to indicate to the contrary, words in a statute will be given the meaning which is generally accepted in popular, every day usage. Ex parte Pepper, 185 Ala. 284, 64 So. 112; Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 34 So.2d 835; Hamilton v. City of Anniston, 248 Ala. 396, 27 So.2d 857; State v. Wertheimer Bag Co. et al., Ala. Sup., 43 So.2d 824, 825.[1] When tested by these rules of construction, we do not believe that railroad cars include street cars. 51 C.J. p. 405. "*Railroad* in this sense is usually limited to roads for heavy steam transportation and also to steam roads partially or wholly electrified or roads for heavy traffic designed originally for electric traction. The lighter electric streetcar lines and the like are usually termed railways." Webster's New International Dictionary, 2d Ed. Unabridged.

We set out other Alabama statutes dealing with railroads and street railways. In Section 409, Title 48, Code of 1940, it is made a crime to injure the property of "any railroad or street railway."

Section 104, Title 29, Code of 1940, makes it a crime for any employee of any "railway, or street railway" to be intoxicated while on duty.

The power to condemn in Section 75, Title 10, Code of 1940, is given to street railroads. In Section 82, Title 10, Code of 1940, the reference is to railroads or street railroads

The right of an easement to cross the line of another is given in Section 29, Title 19, Code of 1940, to "railroad or street railroad."

With reference to eminent domain, in Section 190, Title 10, Code of 1940, the reference is to street car without mentioning railroads.

Section 142, Title 51, Code of 1940, which provides for assessing the property of public utilities makes reference to "railroad companies, street and suburban railroad companies."

In enacting the foregoing statutes it appears that the legislature realized that the term railroad does not include street railroad. This legislative use was given weight in the Missouri case of Sams v. St. Louis & M. R. Co., 174 Mo. 53, 73 S.W. 686, 693, 61 L.R.A. 475, where it is stated: "The very fact of the frequent use of the term 'railroad' in our statutes in such connection as to indicate that * * * it would be taken, as a matter of course, to mean a steam railroad, shows that the usual use of the word is with that meaning, and when some other meaning is intended some additional word is used."

In Dean v. State, 149 Ala. 34, 43 So. 24, 25, this court held that the cars in question were not railroad cars within a statute which provided: "Railroad companies must keep good lights on their night trains, and a sufficiency of good drinking water on all trains; and every conductor, who runs any train without lights or water, as required by this section, must, on conviction, be fined not less than one-hundred, nor more than five-hundred dollars."

This court quoted with approval from a prior decision in Birmingham Min. R. Co. v. Jacobs, 92 Ala. 187, 9 So. 320, 12 L.R.A. 830, as follows: "'There are many sections in the Code applicable to railroads which do not and were not intended to apply to street railways.' * * *"

The Court of Appeals in Birmingham Ry. Lt. & Pr. Co. v. Osburn, 4 Ala.App. 399, 56 So. 599, 600, held that the company was not a railroad within the meaning of

1. Ante, p. 124.

the statute which imposed a duty to blow the whistle or ring the bell in certain designated situations upon "the engineer, or other person having control of the running of a locomotive on any railroad." This decision was followed in Birmingham Ry. Light & Power Co. v. Greene, 4 Ala.App. 417, 58 So. 801.

In Appel v. Selma St. & Suburban Railway Co., 177 Ala. 457, 59 So. 164, 168, this court interpreted a section of the code which read as follows: "A railroad company is liable for all damages done to persons, or to stock or other property, resulting from a failure to comply with the requirements of the three preceding sections, or any negligence on the part of such company or its agents; and when any person or stock is killed or injured, or other property destroyed or damaged by the locomotive or cars of any railroad, the burden of proof, in any suit brought therefor, is on the railroad company to show a compliance with the requirements of such sections, and that there was not negligence on the part of the company or its agents."

It was held that the Selma Suburban Railway Company was not a railroad within the meaning of such section. This decision was followed in Ex parte Selma Street and Suburban Railway Co., 177 Ala. 473, 59 So. 169. In Appel v. Selma Street & Suburban Railway Co, supra, the court observed that the "words 'railroad company,' unconfined by any context, are broad enough to include both steam and electric roads." However "while 'railroad' is broad enough in its most generic sense to include a street railway, a street railway is not in general a railroad in the ordinary sense." 44 Am.Jur. p. 217.

In South & North A. R. Co. v. Highland Ave, and B. R. Co., 119 Ala. 105, 24 So. 114, 117, this court held that an act of the legislature which granted the power "to build, own, and operate street railroads, and use thereon cars propelled by horse, steam, or other motive powers; * * *" did not grant the power to construct a freight belt railroad in and around the city for the purpose of transferring freight cars to and between factories and other railroads. This court stated: "From this power given to a land corporation (which previously had no power to construct a railroad of any kind) to construct a street railroad, no authority can be derived to construct a freightbelt railroad in and around the city, for the sole purpose of transferring freight cars to and from factories and other railroads."

The foregoing Alabama decisions showing a distinction between railroads and street railways are not controlling here for various reasons peculiar respectively to each of those cases, as for instance that street cars were not in use at the time the statute was enacted or that the word locomotive applied only to steam railways or that there was no charter power to operate a railroad. But since these cases do show a distinction between railroads and street railways, it is fair to presume that the legislature was aware of these judicial interpretations when it enacted the present act. Since no mention is made in the act of street railways, it is reasonable to assume that the legislature did not intend to embrace street cars or street railway cars within the term railroad cars.

See also Louisville & Portland Railroad Co. v. Louisville City Railway Co., 2 Duv. 175, 63 Ky. 175; Thompson-Houston Electric Co. v. Simon, 20 Or. 60, 25 P. 147, 10 L.R.A. 251, 23 Am.St.Rep. 86; State v. Duluth Gas & Water Co., 76 Minn. 96, 78 N.W. 1032, 57 L.R.A. 63; Omaha & Council Bluffs St. Ry. Co. et al. v. I. C. C., 230 U.S. 324, 33 S.Ct. 890, 57 L.Ed. 1501, 46 L.R.A.,N.S. 385.

We conclude that the lower court decided the case correctly and that its decree should be affirmed.

Affirmed.

FOSTER, LAWSON and SIMPSON, JJ., concur.