66 So.2d 726

## STATE v. CALUMET & HECLA CONSOL. COPPER CO.

8 Div. 583.

Supreme Court of Alabama.
June 30, 1953.

Si Garrett, Atty. Gen., and H. Grady Tiller, Asst. Atty. Gen., for appellant.

Peach, Caddell & Shanks, Decatur, for appellee.

230

Burr, McKamy, Moore & Tate, Birmingham, amici curiae.

LIVINGSTON, Chief Justice.

This an appeal from a decree of the Circuit Court of Morgan County, Alabama, in Equity, overruling the demurrer of the State of Alabama to the bill of complaint, as amended, of the Calumet and Hecla Consolidated Copper Company, a corporation, hereinafter called the Company, and also overruling the demurrer to certain designated aspects or phases of said bill of complaint.

The bill of complaint, as amended, reflects substantially the following:

That on or about the 20th day of July, 1949, the State Department of Revenue made a deficiency assessment against the Company for use tax alleged to be due by said Company under the provisions of the Alabama Use Tax Act, Tit. 51, Section 787 et seq., Code of Alabama 1940, for the period from January 1, 1948, through March 31, 1949, in the total amount of $3,631.67, including interest, and gave due notice thereof.

The Company filed objections to said assessment and petitioned for a redetermination of said use tax in all respects as by law required. After an oral hearing, and on or about December 23, 1949, the Department of Revenue made a final assessment for use taxes against the Company for said period in the sum of $4,069.02, consisting of use tax in the amount of $3,723.43, and interest on said tax in the sum of $345.59, and of which assessment, notice was duly given to the Company as required by law. On or about January 4, 1950, the Company duly appealed from said final assessment, in all respects as required by law, to the Circuit Court of Morgan County, Alabama, in Equity. No question is raised by the state with respect to the regularity of the appeal, but instead it is admitted that the appeal was proper and duly perfected.

As stated above, the appeal is from a decree overruling the state's demurrer to the bill of complaint filed by the Company in the Circuit Court of Morgan County, Alabama, in Equity. The bill of complaint, as amended, for the purpose of clarification and treatment, divides the several articles involved in this suit into what it terms Items Nos. 2, 3, 6, 7, 10, 11, 15, 18, 19, 22, 24 and 25, and claims that neither of said items is subject to the Alabama Use Tax. The state's demurrer was sustained to items designated in the bill of complaint and in the decree of the court as Items Nos. 3, 7, 10, 11 and 22, and the state's demurrer was overruled as to all other designated items.

The only question involved in the case is whether or not the allegations of the bill with respect to each of said items was such as to bring said items within the exemptions of the use tax law, so that the demurrer of the state was properly overruled, or whether or not the property evidenced by said items or classifications were, as reflected by the bill, or the allegations thereof, subject to the state's demurrer, and, of a consequence, to the use tax in question.

We will treat the items involved as was done in the bill of complaint and the decree of the lower court, and separately decide the question involved as to each separate and several item.

We will not repeat the well-known rules of construction attending consideration of taxing statutes and exemptions thereto which have been often repeated in our decisions. See Pullman-Standard Car Mfg. Co. v. State, 253 Ala. 638, 46 So.2d 500, and cases therein cited; State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824; State v. Bridges, 246 Ala. 486, 21 So.2d 316, 159 A.L.R. 678; State v. Levey, 248 Ala. 656, 29 So.2d 129; Lone Star Cement Corp. v. State Tax Commission, 234 Ala. 465, 175 So. 399; State v. Coastal Petroleum Corp., 240 Ala. 254, 198 So. 610.

The articles involved, characterized in the bill of complaint and also in the decree of the trial court as Item No. 2, consists of

machine shop machines and equipment consisting of screw machines, milling machines, grinders, lathes, and other machines, and the parts of such machines, attachments, and replacements therefor which are made or manufactured for use on or in the operation of such machines, and which are necessary to the operation, and are customarily so used. These machines are used by the taxpayer in converting raw materials into manufactured products, which products are not sold by the taxpayer but are used by the taxpayer as machinery, tools, appliances, etc., with which it manufactures the products which it does sell. The basis for the trial court's holding such machines, equipment, etc., or the use thereof, nontaxable is Section 789(p), Title 51, Code of Alabama 1940, Pocket Part. Said section reads, in pertinent part, as follows:

"The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article: * * *. Machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing, or manufacturing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

It is a well established principle that exemptions from taxation are strictly construed against the taxpayer and in favor of the state. Title Guarantee Loan & Trust Co. v. Hamilton, 238 Ala. 602, 193 So. 107; State v. Praetorians, 226 Ala. 259, 146 So. 411.

The state contends that the words "for sale" should be read into this exemption statute by inference. In other words, appellant asks that following the words "manufacturing of tangible personal property," wherever the same appears in the above-quoted excerpt from Section 789, there be added the words "for sale," or "for sale as so manufactured." It cites no direct authority to support this proposition, but bases its argument on inferences and certain rules of statutory construction. It points out that in Sec. 787, Title 51, Code of 1940, the words "for sale" appear in the following portion of the definition of wholesale sale:

"The term 'wholesale sale' shall include a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or compounds for sale, and the furnished container and label thereof."

It is argued, therefore, that only those items of personal property which manufacture other personal property for sale are exempt under Sec. 789(p). It is further argued that the appellee is a manufacturer and is claiming exemptions for material embraced in Item No. 2 because it is a manufacturer, although the machines and the materials there involved were used by it, not in manufacturing tangible personal property for sale, but for its own use, and that, therefore, the definitions contained in the decisions of this court of a manufacturer are important in determining the question before the court, in that this court has repeatedly held that a manufacturer "sells to take a profit already earned, and a merchant, or dealer, sells to earn a profit." It is argued that when the legislative intent is not clear from the act itself it should be construed in pari materia with other acts concerning the same subject. We are familiar with these rules of construction, but the fact remains that the appellant is asking the courts to supply words not found in the statute itself and which could have been inserted in the act by the legislature if it had intended so to do. Moreover, the effect of the state's argument would be to penalize the appellee because it objects to buying, use tax free, machines, machinery, and parts therefor, which it uses in manufac-

232

turing tangible personal property for sale, and prefers to practice economy and conservation in money, time and effort, and manufacture its own machines and parts for machines, with which, in turn, it manufactures tangible personal property for sale.

■ The plain terms of the statute exempts machines, and parts of such machines, attachments and replacements therefor, used in manufacturing tangible personal property. The rule with reference to a court supplying words said to be omitted from a statute is stated in 59 C.J. 992–993, as follows:

"Words Omitted. Where it appears from the context that certain words have been inadvertently omitted from a statute, the court may supply such words as are necessary to complete the sense, and to express the legislative intent, but it cannot supply words purposely omitted, and should supply an omission only when the omission is palpable and the omitted word plainly indicated by the context; and words will not be added except when necessary to make the statute conform to the obvious intent of the legislature or prevent the act from being absurd; and where the legislative intent cannot be accurately determined because of the omission, the court cannot add words so as to express what might or might not be intended."

See, also, 50 Am.Jur., pp. 221, 222, 223; Trader v. Jester, 1 Terry, Del., 66, 1 A.2d 609, 612; Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407, 415; Johnson v. Barham, 99 Va. 305, 38 S.E. 136, 137, 138; and Railroad Commission of Indiana v. Grand Trunk Western R. Co., 179 Ind. 255, 100 N.E. 852, 855.

■■ It is true that exemption statutes are to be strictly construed in favor of the taxing authority, State v. Wertheimer Bag Co., 253 Ala. 124, 43 So.2d 824, and cases cited, but the court will indulge no strained construction to give effect to this rule where a fair interpretation of the legislative intent may lead to a contrary construction.

Arbitrary rules of construction are of little value when the real intent of the legislature can be gathered from the act itself. State v. Wertheimer Bag Co., supra.

■ We think the articles designated as Item 2 comes clearly within the exemption of Sec. 789(p), supra. If it were not so, the legislature should have told us.

Item No. 6 is designated "overhead crane." The bill of complaint alleges "the tangible personal property covered by this classification is an overhead crane which travels over appellant's production line in its factory or manufacturing plant where the tangible personal property it is processing or manufacturing for sale is in process of being manufactured or processed and with which said property or materials in process are transferred from one machine or operation to another. The rails on which this crane runs extend to and over the Shipping Department. This section is sometimes used for storage of cranes when not in use. Approximately 90% of appellant's finished manufactured goods is shipped in containers weighing not more than 300 pounds gross and handled by hand or hand trucks. When bundles or containers weighing more than 300 pounds are shipped, this crane is called down from the Manufacturing Department for handling the heavy containers. Not more than 10% of the work of this crane is in the Shipping Department and at least 90% of the work of this crane is in the Manufacturing Department where it is used in handling goods in process of manufacture for the purpose of taking them from one machine to another. The crane is a component part of the appellant's production line. The crane is a machine, and its use is controlled by the output of other machines in appellant's production line and is a necessary part thereof."

It is argued by the state that a machine must be used exclusively in manufacturing tangible personal property or products in order for it to come within the statute exempting its use from the use tax, and that the overhead crane in controversy was not so used by appellee, and that the use of same should be taxed. It is argued that the decree of the trial court in holding that the

overhead crane was exempt under the statute, in effect, adopted the "dominant purpose thought or the percentage basis theory," which thought and theory this court declined to accept in the Southern Kraft Corporation case (State v. Southern Kraft Corp.), 243 Ala. 223, 8 So.2d 886.

It is our opinion that if the overhead crane here involved is a machine used in manufacturing personal property that the exemptions provided by Sec. 789, Subdivision (p), supra, applies in spite of the fact that it is used occasionally for something other than the process of manufacturing. The Southern Kraft Corporation case has no application here. The crane here involved was, according to the averments of the bill, used almost exclusively in appellee's production line in manufacturing tangible personal property, and not merely to move finished products around in the shipping department, storage, etc., as was the truck in the case of Alabama-Georgia Syrup Co. v. State, 253 Ala. 49, 42 So.2d 796. In this respect, the case of Alabama-Georgia Syrup Co. v. State has no application whatever. The facts here involved are, in principle, similar to the facts in the recent case of State v. Try-Me Bottling Co., 257 Ala. 128, 57 So.2d 537.

The state next contends that the overhead crane is an automotive vehicle, and relies on two cases; namely, Burford Toothaker Tractor Co. v. Curry, 241 Ala. 350, 2 So.2d 420, and Alabama-Georgia Syrup Co. v. State; supra.

These two cases are readily distinguishable from the case at bar. We are clear to the conclusion that the overhead crane involved is not an automotive vehicle as that term is used in the statute.

Item No. 15, according to the amended bill, paragraph 9(g), includes tools, steel, bars, rods, pipes and sheet, which were purchased by the appellee in stock lengths and are cut and manufactured to proper size and shape so as to become parts for machines which are used for processing or manufacturing tangible personal property. With respect to the steel referred to under said item, it is further alleged that it is not used in exactly the same shape in which the taxpayer purchased it, but that only slight changes are necessary to make the steel fit the machines as replacements for worn-out parts of the machines; that the bars, rods, pipes, etc., included under this item are bought in stock lengths and same are cut or made so as to fit the machine or machines as the same are needed.

With respect to Item 15, the learned trial court said, in part:

"If the steel were purchased in the exact lengths needed there would be no question but that it would be exempt under subdivision (p) of Section 789, supra. While exemption statutes are construed strictly against the taxpayer it would be splitting hairs and carrying technicalities to a ridiculous point to say that the taxpayer could not perform any work of any nature upon a part for a processing machine, under penalty of losing the exemption on the part. Where would such a construction stop? Would it be said that a hole could not be punched in the base of a new electric motor so as to bolt it to a machine in the place of the old motor which is worn out?

" * * * The applicable part of subdivision (p) is as follows: 'and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used.' The statute does not say that the parts must be used in exactly the form they are purchased by the taxpayer and it would be impractical to purchase nearly any part for a machine in exactly the form in which it will be used. Nearly every moving part for a machine must be fitted. This, no doubt, would include grinding and polishing, perhaps trimming an edge that protrudes here, or building up a side that fails to meet the next surface there.

"If a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust the court will assume that the

234

legislature intended that which is workable and fair. It would be manifestly unjust to hold that a man having a plant in Birmingham where the steel mills are located could buy the parts for his machinery free of sales tax but that the man in Decatur would have to pay the tax because he trims off the ends of the steel shapes he buys to make them fit his machines.

"Tool steel is not a building material within the meaning of Principal No. 3 set out in the Wilputte case [State v. Wilputte Coke Oven Corp., 251 Ala. 271, 37 So.2d 197], supra, which was given the court's dictum approval. The very name implies that it is machinery or parts of machinery.

"The state contends that since the tax event occurs when the steel is received by the taxpayer at its plant and this steel is stocked for a while until it is needed for parts of machines as they wear out that the exemption cannot apply. This contention is answered in the Wilputte case in which the court says: 'We think it is a sound principle that if the completed machine was of the type which had been used in the production of tangible personal property or was here so designed, and in good faith intended for, capable of such use, and so used in a reasonable time thereafter, the fact that there was an interval of time after its completion and before it was actually used in production which may be termed a storage under the statute, should not serve to deny the exemption. There is always a period, substantial or theoretical, between the completion of the assembly of a machine in place for use, and its actual use in production. A tax for such storage was not here made.'

"The storage of these parts of machines while awaiting the need of them to replace other parts as they wear out is not the 'storage, use or other consumption in this state of tangible personal property' taxable under Section 788, Title 51 of the Code of Alabama of 1940. It is not the intention of the legislature to give the exemption in one breath and take it away in the next. The reasonable and workable construction of the statute will be adopted by this court.

"An orderly procedure and a fair administration of the exemption statute requires a ruling that this steel be held to be exempt from use tax."

We are in accord with the foregoing opinion of the trial court.

Item No. 18—Rope Slings for Overhead Cranes. It appears from the allegations of the bill of complaint that these rope slings were made for the overhead crane discussed above in this opinion. It seems to be admitted that the crane could not be used without these rope slings, and that they are parts of the crane, or attachments for the crane, and are made or manufactured for use on or in the operation of the crane and which are necessary to the operation and are customarily so used.

■ Apparently, the state admits that if the crane above referred to is exempt from the use tax in accordance with Sec. 789(p) above, that the rope slings now under discussion are also exempt. We have held that said crane was exempt; therefore, the rope slings are likewise exempt.

Item 19 contains two classes of property: First, castor oil, and, second, bichromate of soda and solvents used in solution to bright dip, etch, and cleanse the surface of tubing which taxpayer manufactures.

The bill alleges that the said castor oil so included in this classification is a lubricating oil as defined in Sec. 630 of Title 51, Code of Alabama 1940, and is an oil commonly used in lubricating or oiling engines, bearings, journals, axles, hubs and other parts of machinery, and is used by appellee as a lubricating oil.

The bill of complaint tracks the statute, and the trial court ruled correctly in overruling demurrers insofar as this phase of the case concerns castor oil. The demurrer admits the allegation that the castor oil is a lubricating oil as contemplated by Sec. 630 of Title 51 of the Code.

■ Since the allegation is that it is taxed under Sec. 631 of Title 51, and the

demurrer admits that allegation, the demurrer was properly overruled.

■ The bill alleges, in substance, that the other materials included in Item 19 become an ingredient or component part of the products it manufactures for sale, and under the holding in the case of State v. Southern Kraft Corp., 243 Ala. 223, 8 So. 2d 886, these materials are not taxable. This question also becomes a matter of proof.

Item 24 consists of staples, nails, and other materials used by the taxpayer in making the finished container for the products which it manufactures for sale. The question presented by Item 24 is whether the term "wholesale sale," as defined in Sec. 787(d) of Title 51, Code of Alabama 1940, should be held to include the products used in making a container furnished by the wholesaler, or is it to be limited solely to a completed container.

■ This exact question was ruled contrary to the contentions of appellant in the recent case of Odum Lumber Co., Inc., v. Southern States Iron Roofing Co., 36 Ala.App. 270, 58 So.2d 641, certiorari denied 257 Ala. 258, 58 So.2d 644. It is true that the Odum Lumber Company case, supra, involved a question of sales tax, and the instant appeal involves the use tax, but the principles involved are identical.

■ Item 25 consists of metal boxes mounted on wheels, one side of which is hinged. The various metals and materials which are to be melted in the casting furnace are placed in this container in the proper proportion to produce the desired alloy which is to be cast. The container is lifted over the casting furnace. The hinged side is let down and the furnace charged from the container. This mechanism is without question processing machinery within the meaning of the exemption statute, Sec. 789, supra.

The appellant argues that these boxes on wheels are controlled by the cases of Alabama-Georgia Syrup Company v. State, supra, and Burford Toothaker Tractor Co. v. Curry, supra.

In our opinion, the argument of the appellant disregards the allegations of the bill of complaint. It is alleged that these machines are used in appellee's production line in its manufacturing process. The metal which is to be cast in the casting furnace is placed in these boxes. The various ingredients are weighed out into the machine, which is known as a scrap box or scrap bucket, so as to have the proper proportions for the desired alloy which is to be cast. The machine is then lifted by an overhead crane held above the casting furnace. The hinged side is opened and the material poured into the charging chute of the casting furnace. Admitting the allegations of the complaint to be true, the mechanism is without question a processing machine within the meaning of the exemption statute. Sec. 789, supra.

We find no error to reverse, and the case is accordingly affirmed.

Affirmed.

All the Justices concur.