82 So.2d 232

## STATE

### v.

## CALUMET & HECLA CONSOLIDATED COPPER COMPANY.

### 8 Div. 761.

Supreme Court of Alabama.

Aug. 18, 1955.

Si Garrett, Atty. Gen., and H. Grady Tiller, Asst. Atty. Gen., for appellant.

Peach, Caddell & Shanks, Decatur, for appellee.

MAYFIELD, Justice.

This is an appeal from a final decree of the Circuit Court of Morgan County, in equity. The decree ordered the State of Alabama to pay $2,935.66 as a refund to the taxpayer appellee for certain use taxes previously collected.

The present case arose out of an audit of the taxpayer-appellee's books and an assessment made by the Department of Revenue for use taxes against the taxpayer.

The taxpayer petitioned the Department of Revenue for a redetermination of the use tax assessment. A hearing was held on the taxpayer's petition, and the assessment was made final by the Department. As provided by our law, the taxpayer prosecuted an appeal to the Circuit Court. The Court ordered the parties to plead according to the usual equity practice. The State filed a demurrer to taxpayer's bill. The demurrer was overruled as to certain aspects and sustained as to other aspects. From the decree on demurrer, the State appealed to this Court. The decree of the

lower Court was affirmed in our prior opinion and reported in 259 Ala. 225, 66 So.2d 726. The State thereafter filed its answer in the court below.

Originally the dispute between the taxpayer and the Department of Revenue involved some twelve classifications or groups of items. By the decree on demurrer and by subsequent stipulation between the Department and the taxpayer, agreements on all items and classifications were reached with the single exception of the items, called No. 15, as enumerated in paragraph 9(g) of the taxpayer's bill. With this exception the amount of refund ordered by the Court was agreed upon by the parties.

The present dispute is limited to the question of whether or not the Department's assessment of use tax from the disputed group of items was correct. The bill recites:

"Item #15. General Maintenance (Steel)—$27,431.36

"This classification includes tool steel, bars, rods, pipe and sheet which are purchased by appellant in stock lengths and are cut to proper size so as to become parts for machines which are used for processing or manufacturing tangible personal property. This steel is not used in exactly the shape which appellant purchases it, but only slight changes are necessary to make the steel fit the machines as replacements for worn-out parts of the machines. Due to the time required to receive this type of steel from the place of manufacture, it is necessary to buy the same in stock lengths and cut it to fit machines as it is needed. If the source of supply were in close proximity to appellant's plant the steel would be purchased in the exact length needed as parts or replacements in appellant's manufacturing machinery, but because of the length of time required to get this steel to Decatur, it is necessary that appellant purchase the same in stock lengths and cut the same to fit appellant's manufacturing machines as parts and replacements are needed."

Code of Alabama 1940, Title 51, § 789, provides in part as follows:

"§ 789. Exemptions.—The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article: * * * (p) Machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing, or manufacturing tangible personal property, *and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used.* * * *" [Emphasis supplied.]

In our prior opinion when this case was before us on appeal from the decree on demurrer, we held that the allegations of the bill were sufficient to bring these disputed items within the exemption of Section 789(p), supra.

The only evidence introduced by the taxpayer-corporation was the testimony of its purchasing agent. In general terms his testimony covered the use which is made of the disputed items and the alterations on such items which are required to make them a part of the plant machinery. On direct examination he testified that the only alteration required on the steel was to cut it into proper lengths. The State, by its cross-examination of this witness, showed that on some of this steel, key ways or holes would be required to be cut and that some of the steel had to be welded into place.

As testimony for the State, a revenue examiner for the Department of Revenue testified that he had made an audit of the disputed items and that they were the items about which the taxpayer's witness had previously testified. That, at the time of the audit, he, the examiner, had "regarded"

the items as taxable. The second witness for the State was a former employee of the taxpayer. This witness described the taxpayer's production machinery in detail and further described the alterations required to utilize the steel so as to make it a part of the machines. His testimony did not vary substantially from the taxpayer's witness, except that he stated that in addition to cutting the steel and welding it in place, it is also necessary that holes be countersunk through which the steel is bolted to the machine.

█ The answer of the State to the taxpayer's bill of complaint originally contained averments to the effect that the steel in dispute was not purchased at wholesale. That averment of the answer was stricken on motion of the taxpayer and the court's action in this particular is assigned as error.

The State's position in this particular is summed up by its Proposition of Law No. 2, which states:

"The sale to the taxpayer of the items now involved in this litigation were retail sales and subject to the use tax 'and hence they were not exempt from the use tax' as machines used in * * * manufacturing of tangible personal property * * * and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used."

The Department of Revenue cites Layne Central Co. v. Curry, 243 Ala. 165, 8 So.2d 839; State v. Wilputte Coke Oven Corporation, 251 Ala. 271, 37 So.2d 197; Curry v. Alabama Power Co., 243 Ala. 53, 8 So.2d 521; Lone Star Cement Corporation v. State Tax Commission, 234 Ala. 465, 175 So. 399; Wood Preserving Corporation v. State Tax Commission, 235 Ala. 438, 179 So. 254. We are not of the opinion that these cited cases support the proposition urged by the Department of Revenue.

By express terms, the taxing statute imposes the "use tax" on the storage, use or other consumption of property *purchased at retail.* Code of 1940, Title 51, § 788.

The *specific exemptions* found in Section 789, apply to the storage, use or other consumption of property *purchased at retail.* The taxpayer has made no contention that the disputed items were not purchased at retail, rather their contention is that they come within the exemption heretofore set out.

As the appellant presents the proposition, the applicability of § 789(p) to the disputed items depends on the wholesale purchase of such items. This position misconceives the clear meaning of the exemption and the issues before the court.

█ The State Department of Revenue urges again, on this second appeal, that an item cannot be a part of a machine until it is made with exactness and detail and requires no further alteration to fit into the machine. Further, that a slight change in the material in question, in order to make the part fit the taxpayer's machine, changes the character of the item—at least for tax purposes. By this line of reasoning the appellant was denied the operation of a clear exemption to the use tax law except as to parts that would be interchangeable without any adaptation whatsoever. We considered and rejected this contention in the first appeal. No further elaboration of our previous holding is required for the purposes of this opinion. The appellant by its answer denied the allegation of the bill that only slight changes were required to make the disputed item fit the taxpayer's machine as replacement parts and alleged that the materials were put through a manufacturing process and converted into parts of an entirely different shape, form and use from the original items. This answer to the bill made up an issue of fact for the court below. The essential question is simply whether the allegations of the taxpayer have been sufficiently established. Appellant's contention is that the taxpayer has failed to carry its burden to overcome

220

the presumption of correctness of the Department of Revenue's assessment.

 Substantially all of the testimony in the lower court was directed to the two contesting issues: (1) the use made of the disputed items, (2) the extent of the alterations required to be made upon these items to make them usable as a part of the taxpayer's machines. It is true that the evidence introduced by the taxpayer was given by a single witness. Nevertheless, it was virtually undisputed. We cannot say that the trial court erred in concluding that the disputed items were purchased as replacement parts for machines used in manufacturing tangible personal property and that only slight changes are required on the items as purchased to utilize them as such replacement parts. We, therefore, conclude that the storage, use or other consumption of these disputed items is exempt from the use tax under Code 1940, Title 51, § 789(p).

 The State Department of Revenue was correct in its observation that some of the items in the disputed group should be classified as structural steel. It is undisputed, however, that these items were purchased as replacement parts for the taxpayer's production machinery. We do not consider it significant that this structural steel could have been put to other uses, as for instance, building materials. See State v. Taylor, 262 Ala. 639, 80 So.2d 618; State v. Birmingham Rail & Locomotive Co., 259 Ala. 443, 66 So.2d 884.

 The apportionment of costs rests largely in the discretion of the Chancellor. Southern Natural Gas Co. v. State, 261 Ala. 222, 73 So.2d 731; Thompson v. Bryant, 251 Ala. 566, 38 So.2d 590. We are not prepared to say that in the instant case the Chancellor abused this discretion by taxing all of the costs against the State. The decree of the Circuit Court of Morgan County, in equity, is due to be, and is hereby, affirmed.

Affirmed.

LAWSON, SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.