BROWN, Justice.
■ Brenda 0. Singer, Patsy H. Cannon, Gwen Dill, and John D. Harmon (collectively referred to herein as “the plaintiffs”) appeal from the Shelby Circuit Court’s dismissal of their lawsuit contesting the results of the August 22, 2000, municipal election for the position of Ward 1 council member for the City of Alabaster (“the City”). We affirm.

Facts and Procedural History

The City is governed by a mayor, who is elected by a citywide vote, and seven city council members, who are elected by voting districts or “wards.” The City’s population is predominantly white; according to the 1990 Federal decennial census, only 1,617 of the City’s 14,732 residents are African-American.
In 1991, the City adopted a redistricting plan for its seven wards to reflect annexations and natural population increases. On December 30, 1991, the City obtained “preclearance” from the United States Attorney General (“the Attorney General”) for its redistricting plan, as well as for its mayor-council form of government and its recent annexations, as required by § 5 of the Voting Rights Act of 1965, codified at 42 U.S.C. § 1973c. Section 5 provides, in pertinent part, that covered jurisdictions (of which Alabama is one) may not enforce any change affecting voting without first receiving a preclearance determination from the Attorney General finding that the proposed change is not racially discriminatory in purpose or effect. Under the *956 City’s precleared redistricting plan, the population in one of the City’s seven wards would be predominantly African-American, while the population in the remaining six wards would be overwhelmingly white. The City’s precleared plan also provided that pursuant to §§ 11-46-20 and -21, Ala. Code 1975, nonpartisan municipal elections were to be held on the fourth Tuesday in August in those years in which there was a Presidential election.
Since the 1991 preclearance, the City has approved 58 new commercial and residential annexations. Two. of those annexations were of areas in which the plaintiffs resided at the time of the August 22, 2000, municipal election. Those two annexations were within a broader area known as the Weatherly subdivision, an area where the population is predominantly white. After it annexed an area, the City assigned the annexed area to a ward; the areas of the plaintiffs’ annexations were both assigned to Ward 1, the only ward in which the population was predominantly African-American.
On May 31, 2000, the City sought preclearance from the Attorney General for its annexations and ward assignments made after the 1991 preclearance. On July 10, 2000, the Attorney General precleared all of the City’s commercial annexations, but requested additional information as’ to population statistics, demographic shifts, and election data regarding the City’s residential annexations. The City responded, but the - Attorney General considered its answers to be incomplete. The Attorney General nevertheless recognized the need for an expedited decision because of the impending August 22, 2000, elections. Accordingly, the Attorney General issued an order preclearing all of the annexations, but not all of the ward assignments. Specifically, the order refused preclearance for the assignment of the plaintiffs’ two annexed areas to Ward 1, stating that assigning those annexed areas to Ward 1 diluted the African-American vote in that ward and, thus, defeated the goal of the Voting Rights Act of 1965. The City immediately notified the Attorney General, in a letter dated August 17, 2000, that it would comply with thé preclearance order by not counting the votes from these two annexed areas in the Ward 1 city-council race. The City also advised the Attorney General that it was unable to print new ballots for the two unpre-cleared annexed areas to Ward 1 before the upcoming election; however, it informed the- Attorney General that it would accommodate the preclearance issue by having the voters in the two unprecleared annexed areas of the Weatherly subdivision vote at separate polling sites for the Ward 1 city-council election, thereby segregating their votes from the rest of the precleared Ward 1 electorate so that their votes for the Ward- 1 council member would not be counted.
The City held its municipal election on August 22, 2000, as planned. The Ward 1 city-council election involved a contest between Bobby Lee Harris, the incumbent, and Todd Goode, the challenger. In the precleared areas of Ward 1, Harris, an African-American, garnered 326 votes, while Goode, who is white, garnered 287 votes. A total of 103 ballots were cast in areas included in the two Weatherly subdivision annexations. All of the ballots included votes for mayor and all but two ballots included votes for Ward 1 city council. Pursuant to the City’s promise to comply with the Attorney General’s pre-clearance order, the City counted all the Weatherly subdivision votes for mayor but disallowed the votes in the two annexed areas for Ward 1 city council. The record *957 suggests that all of the 101 votes cast in the Ward 1 city-council election by those residents in the Weatherly subdivision annexed areas were cast for Goode. Had those votes been counted, Goode would have won the race with 388 votes.
On August 28, 2000, the plaintiffs, who are among the 101 Weatherly subdivision voters whose ballots were not counted in the Ward 1 city-council election, sued the City, Steve Rauch (the mayor of the City of Alabaster), and Harris in the Shelby Circuit Court contesting the election result favoring Harris. The plaintiffs contended that disallowing their votes in the Ward 1 city-council election violated their federal and state constitutional rights to equal protection and their right to vote, guaranteed by § 2 of the Voting Rights Act of 1965. The plaintiffs asked the circuit court to nullify the results of the election, or, alternatively, to order that the Weath-erly subdivision votes from the two annexed areas be counted in the Ward 1 city-council election.
The defendants filed motions to dismiss, arguing that state courts lacked subject-matter jurisdiction over the case under § 5 of the Voting Rights Act of 1965. The circuit court agreed, holding that it could not fashion a remedy without “disregarding ... clearly established federal law.” The circuit court subsequently dismissed the case, and the plaintiffs appealed.

Discussion

The question presented in this appeal is whether the circuit court erred in dismissing the plaintiffs’ action for lack of jurisdiction.
Under our federal system, state courts and federal courts are presumed to have concurrent jurisdiction over cases arising under federal law. Congress, however, may confer upon federal courts exclusive jurisdiction by means of an exclusive statutory directive. See Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). Congress has pronounced that only federal courts can entertain “[a]ny action under this section [§ 5 of the Voting Rights Act].” 42 U.S.C. § 1973c. Accordingly, this Court, observing its constitutional duty to recognize the supremacy of federal law, has held that “cases involving the interpretation of the preclearance requirements of Section 5 of the federal Voting Rights Act are within the exclusive jurisdiction of the federal courts.” Mitchell v. City of Prichard, 538 So.2d 1, 2 (Ala.1988). The dispositive question in the present case is whether the plaintiffs’ action “arises under” § 5, thereby divesting state courts of jurisdiction".
The plaintiffs maintain that their action is an election contest, at the heart of which is a claim that they were unconstitutionally denied the right to vote in the August 22, 2000, Ward 1 election.[1] They argue that any nexus their claim may have with § 5 of the" Voting Rights Act is merely incidental and, thus, does not prevent the Shelby Circuit Court from exercising jurisdiction. In so arguing, the plaintiffs assert that their cause of action accrues under state election laws rather than under § 5 of the Voting Rights Act.
The actual source of the plaintiffs’ right to bring an action, however, is not necessarily determinative of the question whether thejr lawsuit “arises under” § 5. It is true that “[o]rdinarily, ‘[a] suit arises under the law that creates the cause of ac *958 tion.’ ” Hudson Ins. Co. v. American Elec. Corp., 957 F.2d 826, 828 (11th Cir.1992) (quoting American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916)). There are many instances, however, where claims brought under the color of state law nevertheless raise federal questions, thereby conferring upon federal courts subject-matter jurisdiction. As to these situations, the United States Supreme Court has said that federal subject-matter jurisdiction exists where the plaintiffs right to relief “depends on resolution of a substantial question of federal law.” Franchise Tax Bd. of the State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). We believe that federal-question jurisprudence extends to the present case, where state jurisdiction can exist only if a full adjudication of the plaintiffs’ lawsuit is possible without consulting § 5.
The plaintiffs, in filing this election contest, have sought to nullify the results of the Ward 1 city-council election so that one of two remedies requested in their complaint can be ordered. Accordingly, in addition to nullification, the plaintiffs have asked the Shelby Circuit Court either (1) to conduct a recount of all votes cast in the Ward 1 election, including those votes from the annexed areas of the Weatherly subdivision that were originally excluded, or (2) to delay a second Ward 1 election indefinitely, pending the assignment of the allegedly disenfranchised Weatherly subdivision voters to a ward that has been precleared.
As to the first remedy the plaintiffs requested, the United States Supreme Court has clearly foreclosed the option of counting votes from unprecleared areas. In Clark v. Roemer, 500 U.S. 646, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991), a federal district court in Louisiana permitted state judicial elections to go forward and allowed the winners of the elections to take office, even though the Attorney General had interposed valid objections to the election process for the judgeships. The Supreme Court, reversing the district court, held that “ § 5’s prohibition against implementation of unprecleared changes required the District Court to enjoin the election.” Clark, 500 U.S. at 654, 111 S.Ct. 2096.
In the present case, the Attorney General has likewise interposed an objection, refusing to preclear the City’s inclusion in Ward 1 of the areas annexed in the Weath-erly subdivision. Any remedy authorizing a recount to include votes from these un-precleared areas vrould necessarily contravene the Attorney General’s objection. Therefore, ordering this remedy would effectively overturn the Attorney General’s preclearance adjudication, something that § 5 allows only federal courts to do.
The second remedy the plaintiffs requested, which involves nullifying the Ward 1 election and delaying a second vote until the City has obtained preclearance, likewise directly involves the application of § 5. In Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), Chief Justice Warren, writing for the Court, observed:
“The Voting Rights Act was aimed at the subtle, as well as the obvious, state regulations which have the effect of denying citizens their right to vote because of their race.... [T]he Act gives a broad interpretation to the right to vote, .recognizing that voting includes ‘all action necessary to make a vote effective.’ 79 Stat. 445, 42 U.S.C. § 19731(c)(1) (1964 ed., Supp. I). See Reynolds v. Sims, 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)....
“The legislative history on the whole supports the view that Congress intended to reach any state enactment which *959 altered the election law of a covered State in even a minor way.”
Allen, 393 U.S. at 565-66, 89 S.Ct. 817 (footnote omitted).
The Supreme Court later addressed the postponement of elections in NAACP v. Hampton County Election Commission, 470 U.S. 166, 105 S.Ct. 1128, 84 L.Ed.2d 124 (1985). In that case, several residents of Hampton County, South Carolina, and the NAACP, a civil rights organization, sued the Hampton County election commission and several other related defendants, seeking to enjoin a school-board election as illegal under § 5. The plaintiffs alleged that several election procedures had been changed, but had not been pre-cleared, including the scheduled date of the school-board election.
Ironically, the election commission’s decision to change the date of the school-board elections was the result of an attempt by the commission to comply with § 5. The commission changed the date of the school-board elections after the Attorney General had precleared a previously submitted election plan. The preclearance of that plan by the Attorney General had the effect of nullifying an election previously held under the prior election rules. Therefore, in an effort to implement the new precleared plan, the commission scheduled a second election to occur on a special date. The federal three-judge panel held that, although implementation of the new election plan was a change under § 5, “the scheduling of the election and the filing period were simply ‘ministerial acts necessary to accomplish the. statute’s purpose ..., and thus did not require pre-clearance.’ ” Hampton County, 470 U.S. at 174, 105 S.Ct. 1128. On appeal, the Supreme Court reasoned that its inquiry in § 5 cases was not whether the implemented election-procedure changes were actually discriminatory, but “whether the challenged alteration has the potential for discrimination.” Id. at 181, 105 S.Ct. 1128. Justice White, writing for the Court, concluded that changing the date of an election had such potential, and the Supreme Court reversed the lower court. The Court held that changes regarding the date of an election — even when those changes affect only a single election cycle — require preclearance. Id.
In the present case, we are unable to afford the plaintiffs the relief they request without doing violence to § 5. The United States Supreme Court has made it clear that state courts, when considering a remedy altering an election process, must defer to the preclearance mandate of § 5. Specifically, the Court has said, “When a party to a state proceeding asserts that § 5 renders the contemplated relief unenforceable, therefore, the state court must examine the claim and refrain from ordering relief that would violate federal law.” Hathorn v. Lovorn, 457 U.S. 255, 269-70, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982). We are therefore confronted with a situation where we must make a § 5 preclearance adjudication before granting the plaintiffs their requested relief, or, indeed, any other relief with respect to the City’s election procedures, something that § 5 clearly precludes our doing. For the same reason that state courts are powerless to grant relief to the plaintiffs, state courts are without jurisdiction to entertain the merits of the plaintiffs’ claim, because a full adjudication — which, of course, includes the possibility of granting relief — requires consideration of a substantial question of law under § 5.

Conclusion

For the foregoing reasons, we affirm the Shelby Circuit Court’s judgment of dismissal for lack of jurisdiction.
AFFIRMED.
SEE, JOHNSTONE, WOODALL, and STUART, JJ„ concur.-
*960 LYONS and HARWOOD, JJ., concur specially.
MOORE, C.J., and HOUSTON, J., dissent.

. In their complaint contesting the August 22, 2000, election, the plaintiffs claim that the City deprived them of their constitutional right to vote when it proceeded with the August 22, 2000, election before it obtained pre-clearance for the inclusion in Ward 1 of the areas annexed into the Weatherly subdivision.