26 So.3d 407 (2009)
TOWN OF MOUNTAINBORO
v.
Treva GRIFFIN and Benny E. Griffin.
Treva Griffin and Benny E. Griffin
v.
Town of Mountainboro and City of Boaz.
1070731 and 1070777.
Supreme Court of Alabama.
January 16, 2009.
Rehearing Denied June 19, 2009.
*408 James H. Anderson and Ryan Wesley Shaw of Beers, Anderson, Jackson, Patty & Fawal, P.C., Montgomery, for appellant/cross-appellee Town of Mountainboro.
Jack Floyd of Floyd Law Firm, LLC, Gadsden, for appellees/cross-appellants Treva Griffin and Benny E. Griffin.
MURDOCK, Justice.
The Town of Mountainboro appeals from a judgment against it and the City of Boaz in an action filed by Treva Griffin and Benny E. Griffin contesting the results of an annexation election. The Griffins cross-appeal. As to Mountainboro's appeal, we reverse and remand; we dismiss the Griffins' cross-appeal.

Facts and Procedural History
On October 30, 2007, an election was held to determine whether the citizens of Mountainboro favored the annexation of their town into Boaz. The declared result of the election was 82 votes in favor of annexation and 81 votes against annexation.
On November 9, 2007, the Griffins, qualified electors in Mountainboro, timely filed in the Etowah Circuit Court a contest of the annexation election. Mountainboro and Boaz were named as the contestees. The Griffins alleged that illegal votes had been cast in favor of annexation. It is undisputed that the Griffins, as qualified electors of Mountainboro, had the legal right to contest the annexation election in this manner. See § 11-42-2(8), Ala.Code 1975.[1]
In response to the Griffins' election contest, Mountainboro and Boaz (sometimes collectively referred to as "the contestees") alleged, among other things, that illegal votes likewise had been cast against annexation and that, if those votes were not considered, the resulting vote totals would favor annexation. The Griffins challenged that response, arguing that "counter-contests can only be commenced by a qualified voter" and that, therefore, the contestees did not have legal standing to defend the pro-annexation election result by challenging *409 the legality of votes cast against annexation.
On December 28, 2007, the trial court held a hearing at which ore tenus evidence was presented. The parties stipulated that one person who had voted against annexation was not a qualified elector of Mountainboro and that her vote should be struck from the total. The Griffins offered testimony and evidence concerning three voters who, according to the Griffins, had cast illegal votes in favor of annexation. Mountainboro offered evidence in rebuttal to the Griffins' evidence. Also, over the objection of the Griffins, Mountainboro presented evidence indicating that some voters had cast illegal votes opposing annexation. The Griffins responded with evidence that those voters were legally entitled to vote and that their votes against annexation were valid.
On February 5, 2008, the trial court entered a judgment in favor of the Griffins and against Mountainboro and Boaz. The court found that two of the three voters challenged by the Griffins had cast illegal votes in favor of annexation and that their votes must be struck from the vote total. Further, the trial court held that neither municipality was a "qualified elector" and, consequently, that neither was entitled to challenge the legality of votes cast against annexation. The trial court's rulings resulted in final vote totals of 80 votes in favor of annexation and 80 votes against annexation. Thus, the annexation was not allowed to proceed.

Mountainboro's Appeal (case no. 1070731)
On appeal, Mountainboro raises a single issue, namely, whether it, as a contestee in the Griffins' annexation-election contest, had standing to submit evidence of allegedly illegal votes cast against the annexation of Mountainboro by Boaz. The trial court held that Mountainboro did not have such standing, and we review that holding de novo. "The issue of standing presents a pure question of law, and the trial court's ruling on that issue is entitled to no deference on appeal." Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 953 (Ala.2004).
We conclude that the trial court incorrectly reasoned from the fact that the governing statute expressly authorizes "any qualified elector" of Mountainboro to contest the declared outcome of the annexation election on the ground, among others, that illegal votes were cast in favor of the annexation to the conclusion that Mountainboro did not have standing to assert that illegal votes were cast against the annexation.
We begin our analysis with the text of the governing statute, § 11-42-2(8). In pertinent part, § 11-42-2(8) reads: "The result of such [annexation] election may be contested by any qualified elector voting at the election in the manner provided for contest of general municipal elections, making the city or town the contestee." (Emphasis added.)
The initial problem with the trial court's reasoning is that the first clause of § 11-42-2(8), emphasized above, does not say that, in the event of an election contest, the only party to the contest that can challenge the legality of votes cast for one side or the other is a "qualified elector." The first clause and its reference to a "qualified elector" is concerned only with who can challenge the declared outcome of an annexation election, not the grounds upon which a challenge to that outcome may be based or the grounds upon which that outcome may be defended. That is, the first clause of § 11-42-2(8) merely constitutes a legislative grant of authority *410 to "any qualified elector" to initiate and prosecute an election contest.
The trial court conflated the threshold question of who may properly initiate the annexation-election contest itself with the separate and different question of what grounds may be asserted and proven by that contestant in an effort to change the outcome of the election. This in turn led to apparent confusion as to the corollary question of what grounds thereafter may be asserted and proven by a contestee in an effort to prevent a change in the outcome of the election. These latter questions, as well as who may serve as a proper "contestee" in the effort to prevent a change in the outcome of the election, are questions not addressed by the first clause of the first sentence of § 11-42-2(8) and its reference to qualified electors. To answer these latter questions, we turn to the balance of that sentence.
The balance of the first sentence of § 11-42-2(8) expressly provides that a contest of an annexation election is to be conducted "in the manner provided for contest of general municipal elections. . . ." "The contest of general municipal elections" is governed by Chapter 46 of Title 11, Ala.Code 1975. Section 11-46-69 provides that the grounds for contesting an election include the counting of illegal votes in favor of the winning side, see § 11-46-69(a)(3), Ala.Code 1975; the rejection of legal votes in favor of the losing side, see § 11-46-69(a)(4); and/or one or more of three other grounds, see § 11-46-69(a)(1), (2), and (5), Ala.Code 1975. The question before us in this case is whether Mountainboro had the right not only to defend against the attempt by the Griffins, as contestants, to prove that illegal votes were cast in favor of the winning side, which, if deducted from the declared vote total in favor that side, would yield a different outcome in the election, but also to counter whatever success the Griffins may have in proving such illegal votes with evidence of illegal votes in favor of the losing side, which, if deducted from the final vote total for that side, would preserve the declared outcome of the election.
Again, we turn to the text of the statute. Section 11-42-2(8) expressly provides that the contest of an annexation election is to be conducted in the same manner as the contest of a general municipal election. In that regard, we find instructive this Court's analysis in Eubanks v. Hale, 752 So.2d 1113, 1134 (Ala.1999), a case involving a contest of the 1998 election for sheriff of Jefferson County, in which Mike Hale had been declared the winner over Jim Woodward:
"The contestants now argue that the contestee is not entitled to present any evidence because he did not file a cross-contest, but the contestee correctly points out that the statutes do not require that he file an independent `cross-contest.' Section 17-15-1, Ala.Code 1975, provides:
"`The election of any person declared elected to . . . any office which is filled by the vote of a single county. . . may be contested. . . .'
"(Emphasis added [in Eubanks].) Under the language of the statute, then, only the election of a `person declared elected' may be contested. Because Woodward had not been declared the winner of the sheriff's race, the statute did not authorize Hale to file an election contest. Section 17-15-32, Ala.Code 1975, provides:
"`If, on the trial of the contest of any election, . . . it shall appear that any person other than the one whose election is contested, received or would have received, had the ballots intended for him and illegally rejected been received, the highest number of *411 legal votes, judgment must be given declaring such person duly elected. . . .'
"In light of these statutes, we conclude that the contestee is not prohibited from introducing such evidence of votes cast illegally for [the losing side]. Neither are the contestants foreclosed from offering any other evidence of illegal votes that they claimed were cast for [the winning side]."
(Final emphasis added.)
As in Eubanks v. Hale, the applicable statutes in this case  §§ 11-42-2(8) and 11-46-69(a), which in all material respects is worded the same as the statute at issue in Eubanks  do not require the filing of a cross-contest. As in that case, "we conclude that the contestee is not prohibited from introducing . . . evidence of votes cast illegally for [the losing side]." 752 So.2d at 1134. That is, we conclude that Mountainboro, as a properly named contestee in this case, had standing to try to preserve the declared outcome of the election both by rebutting the evidence of illegal votes cast in favor of the proposed annexation offered by the contestants and by submitting evidence of illegal votes cast against the proposed annexation.
Our conclusion finds support in common sense, reason, and fairness. As was stated in Ex parte Hayes, 405 So.2d 366, 370 (Ala.1981) (quoting State v. Calumet & Hecla Consol. Copper Co., 259 Ala. 225, 233-34, 66 So.2d 726, 731 (1953)): "`If a statute is susceptible of two constructions, one of which is workable and fair and the other unworkable and unjust, the court will assume that the legislature intended that which is workable and fair.'" Our understanding of the statutory scheme created by the legislature for contesting annexation elections avoids a construction that is unworkable and unjust in favor of one that is workable and just. It avoids a construction whereby one side in an election contest can have removed from the vote totals illegal ballots cast against it but the other side cannot and thus recognizes the fundamental importance of the right to vote and is consistent with fundamental principles regarding the integrity of elections.[2]
Moreover, we cannot conclude that the legislature, in adapting § 11-46-69 to an annexation election in § 11-42-2(8), intended to establish a process by which a contestant can obtain a binding judgment from a court of law establishing the legality or illegality of an annexation election by naming someone as a "contestee," or defendant, who cannot fully defend the outcome of that election.[3] If the otherwise properly named defendants in such a proceeding lack the necessary standing to fully and fairly defend the outcome of the election, one may question not only the integrity of the outcome achieved in such a proceeding but, indeed, whether the proceeding enjoys the necessary adverseness of parties to make for a "case" over which the court has subject-matter jurisdiction in the first place. Cf. Ex parte State ex rel. James, 711 So.2d 952, 960 (Ala.1998) ("`The absence of adversary or the correct adversary parties is in principle fatal'" to justiciability and thus to subject-matter jurisdiction. (emphasis omitted; emphasis *412 added) (quoting Rogers v. Alabama Bd. of Educ. 392 So.2d 235, 237 (Ala.Civ.App. 1980))).
We therefore conclude that the judgment of the trial court is due to be reversed. The cause is remanded for the trial court to evaluate, consistent with this opinion, the evidence introduced at trial by Mountainboro of the illegality of certain votes cast against annexation and to enter a new judgment that takes that evaluation into consideration.

The Griffins' Cross-Appeal (case no. 1070777)
In their cross-appeal, the Griffins complain that the record contains no evidence indicating that a prior annexation into Mountainboro of an area known as Skyland subdivision had ever been "precleared" by the Justice Department under § 5 of the Voting Rights Act, 42 U.S.C. § 1973c. Therefore, according to the Griffins, voters who reside in that area should not have been included in the current election. The Griffins also complain that there had been no Justice Department preclearance of a strip of land previously annexed into Boaz that physically connects Mountainboro with Boaz, establishing the connection necessary for the annexation. Mountainboro responds by pointing out that the Griffins did not include their objection to these votes in their complaint in the election contest and did not make these arguments at trial, raising them for the first time in a posttrial motion.
In any event, according to Mountainboro, the trial court was without jurisdiction to entertain a case involving an interpretation and application of the federal Voting Rights Act. It cites Singer v. City of Alabaster, 821 So.2d 954, 957 (Ala. 2001) (quoting Mitchell v. City of Prichard, 538 So.2d 1, 2 (Ala.1988), which involved a disputes over the validity of certain purported municipal annexations and de-annexations), for the proposition that "`cases involving the interpretation of the preclearance requirements of Section 5 of the federal Voting Rights Act are within the exclusive jurisdiction of the federal courts.'" Based on Singer and Mitchell, the Griffins cross-appeal is due to be dismissed. Any relief the Griffins may seek under § 5 of the Voting Rights Act should be pursued in federal court.
1070731  REVERSED AND REMANDED WITH INSTRUCTIONS.
1070777  APPEAL DISMISSED.
COBB, C.J., and SEE, SMITH, and PARKER, JJ., concur.
LYONS, J., concurs specially.
WOODALL, STUART, and BOLIN, JJ., dissent.
LYONS, Justice (concurring specially).
When the legislature dictates that a statute applicable to one circumstance shall apply to a different circumstance, we are confronted with challenging issues of statutory construction. Although I am not unmindful of our obligation to construe strictly laws governing election contests, I am satisfied that the main opinion correctly adheres to legislative intent.
Section 11-42-2(8), Ala.Code 1975, expressly provides that the town or city seeking to annex the property is properly named as the "contestee" in a contest of an annexation election. Section 11-42-2(8) also contemplates that the contest is to be conducted in the same manner as the contest of a general municipal election.
I consider the legislature's use of the word "contestee" in § 11-42-2(8), when coupled with the incorporation of procedures governing general municipal elections, as sufficient indicia of intent to confer *413 upon a municipality named in a contest of an annexation election the same prerogative of challenging illegal votes as enjoyed by a party also described as a "contestee" in several instances in Title 17, Chapter 16, Ala.Code 1975, who, as a candidate for office, is of necessity a qualified elector. Had the legislature been disinclined to permit a municipality the prerogative available to a contestee under the general-election-contest statute, then it could easily have phrased § 11-42-2(8), in which the general-municipal-election-contest statute is made applicable, without describing the municipality as a "contestee."
WOODALL, Justice (dissenting).
"This Court has been unequivocal in stating that elections normally do not fall within the scope of judicial review." Sears v. Carson, 551 So.2d 1054, 1056 (Ala.1989). "An election contest is a statutory matter, and the statute governing the election must be strictly observed and construed." Long v. Bryant, 992 So.2d 673, 680 (Ala. 2008). "`An election contest being purely statutory, the courts are limited in their investigation to such subjects as are specified in the statutes.'" Longshore v. City of Homewood, 277 Ala. 444, 446, 171 So.2d 453, 455 (1965)(quoting 29 C.J.S. Elections § 247). In my opinion, the Court has ignored these well established principles; consequently, I respectfully dissent.
The Court holds that Mountainboro, the municipality that conducted the annexation election, has the legal right to challenge the legality of certain votes cast in the election. However, this holding is not supported by the applicable statutes. Having considered the unambiguous language in both § 11-42-2(8), Ala.Code 1975, and § 11-46-69(a)(3), Ala.Code 1975, it is clear to me that only a "qualified elector" has standing to challenge the legality of votes cast in an annexation election. Any other conclusion violates the principle that "the statute[s] governing the election must be strictly observed and construed."
I disagree with the Court's conclusion that the analysis in Eubanks v. Hale, 752 So.2d 1113 (Ala.1999), is instructive in this case. In its judgment, the trial court stated:
"Hale held that once a contest is filed, it is not necessary for the contestees to file an independent `cross-contest' in order to challenge votes themselves. In Hale, however, the contestant and the respondent/contestee were both `qualified electors.' So, Hale is not instructive on the key issue of [Mountainboro's] standing in the case at bar."
The trial court correctly distinguished Hale, and that case does not support today's holding.
For the foregoing reasons, I would affirm the judgment of the trial court in Mountainboro's appeal. The Griffins in their cross-appeal, of course, have argued that the judgment is due to be affirmed. Consequently, I would dismiss their cross-appeal as moot.
STUART and BOLIN, JJ., concur.
NOTES
[1] Section 11-42-2(8) provides:

"Whenever the council [of a city or town] shall pass a resolution to the effect that the public health or public good requires that certain territory . . . shall be brought within the limit of the city or town:
". . . .
"(8) The result of such election may be contested by any qualified elector voting at the election in the manner providing for contest of general municipal elections, making the city or town the contestee."
No party disputes that both Boaz and Mountainboro were properly named by the Griffins as contestees in this case.
[2] We have not been presented in this case with the issue whether an election-contest procedure whereby one side can have removed from the vote totals illegal ballots cast against it but the other side cannot would raise equal-protection or due-process concerns.
[3] Mountainboro argues in its brief that to hamstring the contestee in the manner proposed by the Griffins "defies logic."