22 So.2d 325

## CITY OF BESSEMER et al. v. HUEY.
### 6 Div. 338.

Supreme Court of Alabama.
May 17, 1945.

H. H. Sullinger, of Bessemer, for appellants.

Huey, Welch & Stone, of Bessemer, for appellee.

STAKELY, Justice.

This is an appeal from a decree overruling a demurrer to a bill of complaint in equity. The bill of complaint was filed by T. T. Huey (appellee) against the City of Bessemer, a municipal corporation, and Fred T. McClendon (appellants) to nullify and enjoin the performance of a lease made by the City of Bessemer to Fred T. McClendon of the City Hall Auditorium for use as a theatre.

The allegations of the bill of complaint in substance show the following: The complainant is a resident citizen and taxpayer of the City of Bessemer. The City of Bessemer has a City Hall in which is located the municipal offices and departments of the city. The City Hall building was constructed partly at one time and partly at another. The first portion of the City Hall was completed prior to 1940. Construction of the last portion, in which is located the City Hall Auditorium, began during 1940 and was completed in 1944. The two portions of the City Hall, however, make up a single unit known as the City Hall, and it is a public building constructed for and used for municipal purposes.

In the construction of the last portion of the City Hall the materials and equipment used in the construction of the building were paid for with public funds of the city and the labor was furnished by the United States of America through the Works Projects Administration. The bill of complaint contains the following allegation: "That the City Hall Auditorium was built for public and municipal purposes and for the use and enjoyment of the citizens and taxpayers of said City of Bessemer as a place of public assemblage and for various and sundry other public and municipal functions and affairs, and has been and is being used for such purposes."

On December 19, 1944, the City Council of Bessemer adopted a resolution pursuant to which the mayor and clerk of the city executed a lease, dated December 20, 1944, a copy of which is attached as an exhibit to the bill of complaint and made a part thereof. According to the lease, the City of Bessemer has rented the City Hall Auditorium to the respondent, Fred T. McClendon, for a term of five years for exclusive

use as a theatre for the entertainment of the white race only and for no other purpose. The amount of the rental is ten percent of gross receipts, exclusive of federal, state and city taxes, with a minimum rent of $250 per month. The lessee is also given the right to renew the lease for another term of five years on the same terms. The bill of complaint also contains the following averments: "That under the terms of said lease your Complainant, a citizen of, a resident in, and a taxpayer in said City of Bessemer, and all other citizens, residents and taxpayers in said City would be excluded from the use and enjoyment of said City Hall Auditorium as such which was the purpose for which it was constructed, used and maintained."

■ Without doubt the complainant, as a resident and taxpayer of the City of Bessemer, has the right to maintain the bill of complaint. Inge v. Board of Public Works of Mobile, 135 Ala. 187, 33 So. 678, 93 Am.St.Rep. 20; Coleman v. Town of Eutaw, 157 Ala. 327, 47 So. 703; Alabama Power Co. v. City of Scottsboro, 238 Ala. 230, 190 So. 412.

The question presented by the bill and demurrer thereto ·may be simply stated. Can the City of Bessemer, without specific statutory authority, lease the City Auditorium to an individual for private business, viz., a theatre, when it was built with public funds for public and municipal purposes, and while it is being devoted to such uses? Our answer is that this cannot be done.

In order to understand the reasoning by which this conclusion is reached, it is well first to note the statutory authority which governs the municipality, with respect to the property which it owns.

In Title 37, § 1, Code of Alabama 1940, the authority of a municipal corporation in this respect is set out as follows: " * * * shall sue and be sued, contract and be contracted with, acquire property by purchase, gift, devise, or appropriation for any municipal purpose herein authorized; and the same shall be held, managed, and controlled by the said municipal corporations under the provisions of law herein contained, and all rules, regulations, resolutions and ordinances that may be required to carry out any or all of the provisions of this title, shall be adopted by the several councils thereof. Such municipal corporations shall be invested with the full powers, duties and authority herein granted."

And in Title 37, § 429, Code of Alabama 1940, the following provision is made for the management and control of the property belonging to cities:

"All legislative powers and other powers granted to cities and towns shall be exercised by the council, except those powers conferred on some officers by law or ordinance. They shall perform the duties required in this title, including the following:

\* \* \* \* \* \*

"11. Except as otherwise provided herein, they shall have the management and control of the finances and all of the property, real and personal, belonging to the city or town."

■ It is clear from the foregoing that there is no express authority given to a city to sell or lease its real property. This court has said that "it is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." Cleveland School Furn. Co. v. City of Greenville, 146 Ala. 559, 41 So. 862, 863.

In 38 Am.Jur. 169, § 489, in referring to the power of a city to lease municipal property, it is said: " * * * it cannot without express legislative authority lease for private purposes or for compensation property held by it for the public and governmental purposes and actually devoted to such uses. Thus, a municipal corporation cannot lease land dedicated as a public park, common, square, or playground, nor can it lease part of a public wharf for private use. It has also been held that a memorial building may not be leased to private persons for private purposes."

In the case of City of Eufaula v. McNab, 67 Ala. 588, 42 Am.Rep. 118, the city contracted to purchase certain land which was to be leased to the South-East Alabama Agricultural and Mechanical Association for their annual fairs, the lessee to have exclusive use of the premises. The city was to issue bonds for the purchase. After extended discussion, which need not again be set out here, this court concluded: "We are of opinion that the city of Eufaula had no power to make this purchase for such a purpose. The city council,

therefore, have no authority to levy taxes for the payment of the bonds, or the accumulated interest on them, and they impose no legal liability for their payment upon the municipality of Eufaula."

This case was cited with approval by this court in State ex rel. Radcliff v. City of Mobile et al., 229 Ala. 93, 155 So. 872.

On principle we say that if a city cannot acquire property to lease for private purposes, it cannot lease for private purposes property already held for public use and which is being devoted to public use, without specific statutory authority. The authorities support this position. Buckhout et al. v. City of Newport, 68 R.I. 280, 27 A.2d 317, 141 A.L.R. 1440; City of Ogden City v. Bear Lake & River Water-Works & Irrigation Co., 16 Utah 440, 52 P. 697, 41 L.R.A. 305; Meriwether v. Garrett, 102 U. S. 472, 26 L.Ed. 197, 204.

But it is urged by appellants that our decisions in Jackson v. Ball et al., 211 Ala. 273, 100 So. 327, and Corning et al. v. Patton, 236 Ala. 354, 182 So. 39, assert a contrary view. We do not agree. In those cases we held that the Board of Revenue had the implied power to lease the old Jefferson County Courthouse and jail site, "after the use of same as a courthouse and jail had ceased," and accordingly there was no need of the property for county purposes. The allegations of the bill in the case at bar assert a contrary situation. The bill alleges that "the City Hall Auditorium was built for public and municipal purposes * * * and has been and is being used for such purposes." It might be added that the City Hall Auditorium was erected only about a year before the lease was made.

 It is further insisted that the City Council has the power to determine whether the City Auditorium is needed for public purposes and when this authority is exercised, as was sought to be done in the present case, the discretion of the City Council in regard thereto will not be reviewed by the courts except for fraud or palpable abuse of discretion, citing Pilcher v. City of Dothan, 207 Ala. 421, 93 So. 16, and Van Antwerp v. Board of Commissioners, 217 Ala. 201, 115 So. 239. But here it is not a question of abuse of discretion, for that implies an authority to act. Here there can be no room for discretion, since there can be no authority to act as long as the property is being used for public and municipal purposes, which is the situation according to the bill. "A municipal corporation has no implied or incidental authority to alien, or to dispose of for its benefit property dedicated to or held in trust for the public use or extinguish the public uses in such property * * *." Dillon on Municipal Corporations, Vol. 3, 5th Ed., § 1102, p. 1758.

Nor do we think the averments of the bill too general. The ownership and maintenance of a City Auditorium are well within the functions of city government. It is a place for assemblage where discussion of matters of public interest may be had. It is a place where the minds of the people may be stimulated for the public good through lectures, music and other forms of art. It is a place where the gathering of the people in social affairs is in the public interest. In short, we say in conclusion that while the City Auditorium is being used for public and municipal purposes for which it was built, which include among other things the foregoing, the city may not deprive its citizens of those benefits and turn the property over to an individual for commercial purposes, in this case for five years and perhaps for a longer time.

The decree of the lower court is without error.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.