MAIN, Justice.
Ed Richardson and Reginald Eggleston, individually and in their official capacities as interim superintendent of the Alabama Department of Education and chief administrative officer of the Alabama State Board of Education, respectively, and Gordon Stone, individually and in his official capacity as mayor of the Town of Pike Road (hereinafter collectively referred to as "the defendants"), appeal from an injunction entered by the Montgomery Circuit Court ("the trial court") staying the sale of Georgia Washington Middle School, located in Montgomery, and the sale of any other real property owned by, or the closure of any other schools operated by, the Montgomery County Board of Education. We hold that the trial court never had subject-matter jurisdiction over this case. Accordingly, we dismiss the appeal and order the trial court to dismiss the case.
Facts and Procedural History
The Montgomery County School System operates approximately 55 schools, 11 of which are on the "failing-schools" list established under the Alabama Accountability Act of 2013, codified at § 16-6D-1 et seq., Ala. Code 1975. Other Montgomery County schools, although not on the failing-schools list, are among Alabama's lowest achieving schools. As of early 2017, the Montgomery County Board of Education ("the MCBOE") was not in compliance with the School Fiscal Accountability Act, *239 codified at § 16-13A-1 et seq., Ala. Code 1975 ("the SFAA"), because:
(a) The MCBOE did not have a permanent chief school financial officer;
(b) it had not met various financial requirements of the SFAA or was not timely in meeting those requirements;
(c) a majority of schools under the MCBOE's supervision were "priority schools" under the Educational Accountability and Intervention Act of 2013, codified at § 16-6E-1 et seq., Ala. Code 1975 ("the EAIA"), in other words, schools that were substantially and chronically underperforming based on indicators such as low proficiency scores, low graduation rates, high absentee rates, fiscal deficiencies, and school-safety or transportation issues;
(d) the Child Nutrition Program operations in its schools were inefficient, unorganized, and lacked accountability;
(e) student enrollment had declined consistently at an average rate of 1.85% per year since 2013; and
(f) the MCBOE had consistently operated with a general-fund balance that contained an accounting error of almost $4 million.
On January 12, 2017, the Alabama State Board of Education ("the ASBOE") intervened in the operations of the MCBOE under the intervention process authorized by the EAIA. The EAIA eliminated barriers to the implementation of reforms that had encumbered intervention procedures under earlier statutes. The predicate for intervention is the unwillingness or inability of a local school board to properly manage its affairs. Intervention and the "direct and comprehensive control over [a local board's] decision making and operational functions" are warranted "when the demonstrated inability of [a local board of education] to discharge administrative, operational, or instructional functions threatens to deprive students of essential educational services." § 16-6E-2(1), Ala. Code 1975.
The MCBOE consented to the intervention, which has begun to stabilize its school system both academically and financially. The MCBOE's financial position has improved under the guidance and direction of the ASBOE intervention team, including the retention of funds in the State's General Fund necessary to offset revenue shortfalls and expenditure overruns in fiscal year 2017, the negotiation of a treasury-management relationship with a local bank to generate recurring annual interest income, the reorganization of the Child Nutrition Program to maximize operating efficiency and accountability; and the enhancement of operating efficiency and accountability in custodial-services operations.
In mid-September 2017, then superintendent of the Alabama Department of Education ("the Department"), Michael Sentance, resigned his position. On September 14, 2017, the ASBOE appointed Dr. Ed Richardson as interim superintendent of the Department.[1]
Around the same time Richardson accepted the appointment as interim superintendent, a lawsuit was filed in the Montgomery Circuit Court challenging the State's intervention into the Montgomery County School System and alleging multiple abuses of authority by Sentance and *240 others. See Murrell v. Sentance, Case No. CV-2017-000501 ("Murrell"). The Montgomery Circuit Court entered an order staying "the proposed or putative transfers or other employment actions described in the verified complaint, including the transfers of not only the named Plaintiffs but of others similarly situated ... pending further review by, and orders of, this Court." The circuit court further directed the parties to mediate the case. Richardson and the other defendants settled the case in order to allow the intervention process to proceed smoothly. Because the parties successfully reached a mediation agreement, the circuit court dismissed the Murrell case on January 22, 2018.
During the pendency of the Murrell case, the MCBOE voted in October 2017 to sell Georgia Washington Middle School to the Town of Pike Road, subject to the results of an impact study to determine the operational and financial effects of the sale on the MCBOE. After that study was performed and the results reviewed, the MCBOE voted on November 3, 2017, to rescind the sale of Georgia Washington Middle School. Nevertheless, on February 9, 2018, Richardson announced his decision to sell Georgia Washington Middle School to the Town of Pike Road over the objection of the MCBOE. Richardson contended that he had the power under the EAIA to authorize the sale.
On February 23, 2018, different plaintiffs from those in the Murrell case-Edward Simms, Edwina A. Relf, and Tislam D. Ellis-filed another lawsuit naming as defendants Richardson, Eggleston, and Stone. They filed with the complaint a petition for a temporary restraining order ("TRO") and for preliminary injunctive relief, as well as an "Emergency Motion to Prevent Spoliation and to Preserve Evidence."
The plaintiffs alleged that each of them was "a tax-paying resident of Montgomery County." The plaintiffs further alleged that Simms was "employed by the [MCBOE] as a teacher at Robert E. Lee High School" and was "the parent of a student enrolled at Georgia Washington Middle School." They alleged that Relf was "employed by the [MCBOE] as a Child Nutrition Program Manager at Chisholm Elementary School." They alleged that Ellis was "employed by the MCBOE as a teacher at Sidney Lanier High School." Simms later withdrew as a plaintiff in the case.
The plaintiffs alleged in their complaint that Richardson and Eggleston had violated the EAIA and specifically challenged Richardson's authority to sell Georgia Washington Middle School.[2] The complaint alleged breach of the fiduciary duty of good faith and fair dealing against Richardson and breach of the fiduciary duty of loyalty against all defendants. The plaintiffs sought an injunction against Richardson to prevent the sale of Georgia Washington Middle School, a judgment declaring that Richardson was without authority under the EAIA to sell MCBOE property, and a review of the legality of Richardson's decision to sell Georgia Washington Middle School.
On March 1, 2018, the trial court held a hearing on a request to reset the hearing on the petition for a TRO. During that hearing, the court suggested mediation. Soon after the hearing concluded, the court entered an order resetting the TRO hearing for March 29. Less than an hour later, the plaintiffs moved the trial court for an "Order to Maintain the Status Quo,"
*241 which expanded on the relief requested in their initial petition for a TRO. On March 5, the trial court granted the plaintiffs' motion and issued the following order:
"THIS CAUSE coming to be heard on this 1st day of March 2018, and after consideration of Plaintiffs' Motion for Order to Maintain Status Quo filed therewith, it is hereby
"ORDERED, ADJUDGED AND DECREED that said motion is GRANTED; the proposed sale of Georgia Washington Middle School described in the verified complaint, and the proposed sale and/or closure of any other real property owned by the Montgomery County Board of Education, are hereby STAYED pending further orders of this Court. The parties shall maintain the status quo as to all properties owned by the Montgomery County Board of Education.
"Defendants are additionally hereby placed upon notice and are ORDERED that they are responsible for notification to any interested third parties and that all proceedings will be halted henceforth pending further rulings and orders from this Court.
"Further, Defendant Eggleston, Defendant Richardson, and any of their designees or agents, are prohibited from holding any public hearings, public forums, or public informational meetings regarding the proposed closure or sale of any real properties owned by the Montgomery County Board of Education; nor shall any party make any efforts to rezone, transfer, or enter new transportation routes for the students of the Montgomery Public Schools system attending the announced school closings."
(Capitalization in original.)
On March 7, the trial court formally ordered the parties to mediate. Also on March 7, Stone filed a motion seeking relief from the March 5 order and a dismissal of the litigation. On March 9, Richardson and Eggleston filed a motion to set aside the March 5 order. Richardson and Eggleston also filed a motion to dismiss the complaint, in which they challenged the trial court's subject-matter jurisdiction, alleging that the plaintiffs lacked standing to bring the action, that they were entitled to sovereign immunity, and that the plaintiffs' claims lacked justiciability. The parties attempted mediation on March 12, but did not achieve complete resolution of the case. On March 16, Richardson, Eggleston, and Stone filed affidavits in support of their motions to dismiss.
In the meantime, on March 9, 2018, Stone filed an emergency petition for a writ of mandamus with this Court (case no. 1170518), and, on March 13, Richardson and Eggleston filed a similar emergency petition (case no. 1170540). All three defendants filed several motions with their petitions, including an emergency motion to stay the proceedings in the trial court, a motion for expedited consideration of the petitions for the writ of mandamus, and a motion to consolidate the two cases. On March 16, Richardson, Eggleston, and Stone filed a notice of appeal from the trial court's order granting the plaintiffs' motion for an order to maintain the status quo, which the defendants characterized as an order granting a motion for a preliminary injunction (case no. 1170559). They also filed a motion for expedited appellate review, a motion to vacate the trial court's order and to dismiss the complaint, and a motion to consolidate the three appellate proceedings. This Court denied both petitions for a writ of mandamus and the accompanying motions, as well as the motion to consolidate and the motion to vacate and to dismiss filed in this case. This Court granted the motion for expedited *242 appellate review, however, and we now consider the issues raised by the parties.
Discussion
On appeal, the defendants argue that the plaintiffs do not have standing to challenge the sale of Georgia Washington Middle School or any other MCBOE property and, thus, that the trial court never acquired subject-matter jurisdiction over this action and therefore the case, and this appeal, must be dismissed. We agree.
Initially, we briefly address the plaintiffs' threshold argument that this Court does not have jurisdiction to hear the appeal because, they say, the trial court's order was not an appealable order. The plaintiffs state that " 'injunctions' are appealable under Ala. R. App. P. 4., but a TRO or similar short-lived status quo order pending a scheduled hearing, in a non-domestic relations matter, is not an injunction." Plaintiffs' brief, at 20. According to the plaintiffs, "[t]his case involves the latter sort of order," and, thus, the order is not an appealable order. Id. However, contrary to the plaintiffs' contention, the present situation does not involve a "short-lived" nonappealable order. The trial court's order enjoined the sale of Georgia Washington Middle School and the proposed sale of any other real property owned by, or the closure of any other schools operated by, the MCBOE "pending further orders of this Court." On the face of the trial court's order, if this Court did not act, the injunctive relief would remain in place until the trial court issued "further orders," which is an indefinite time. Such an injunction is not in the nature of a "short-lived" TRO and is appealable. Therefore, the plaintiffs' argument is without merit, and we address the defendants' standing argument.
Concerning whether a party has standing to bring an action, this Court has stated:
" 'To say that a person has standing is to say that that person is the proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.' Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala. 1996). 'Standing ... turns on "whether the party has been injured in fact and whether the injury is to a legally protected right." ' [State v. Property at] 2018 Rainbow Drive, 740 So.2d [1025] at 1027 [ (Ala. 1999) ] (quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo. 1998) (Kourlis, J., dissenting) ) (emphasis omitted). In the absence of such an injury, there is no case or controversy for a court to consider. Therefore, were a court to make a binding judgment on an underlying issue in spite of absence of injury, it would be exceeding the scope of its authority and intruding into the province of the Legislature. See City of Daphne v. City of Spanish Fort, 853 So.2d 933, 942 (Ala. 2003) ('The power of the judiciary ... is "the power to declare finally the rights of the parties, in a particular case or controversy ...." ' (quoting Ex parte Jenkins, 723 So.2d 649, 656 (Ala. 1998) ) ); Allen v. Wright, 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed. 2d 556 (1984) ('[T]he law of Art. III standing is built on a single basic idea-the idea of separation of powers.').
"....
"... In Alabama Alcoholic Beverage Control Board v. Henri-Duval Winery, LLC, 890 So.2d 70, 74 (Ala. 2003), a party challenged the constitutionality of Alabama's Native Farm Winery Act, § 28-6-1 et seq., Ala. Code 1975. In that case, this Court effectively restated the standard articulated in *243 Jones [v. Black, 48 Ala. 540 (1872) ], using language adopted from the Supreme Court of the United States:
" 'A party establishes standing to bring a challenge ... when it demonstrates the existence of (1) an actual, concrete and particularized "injury in fact"-"an invasion of a legally protected interest"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).'
"(Emphasis added.)"
Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1256-57 (Ala. 2004) (footnote omitted).
" 'When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.' State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala. 1999). Under such a circumstance, the trial court has 'no alternative but to dismiss the action.' 740 So.2d at 1029."
Ex parte Chemical Waste Mgmt., Inc., 929 So.2d 1007, 1010 (Ala. 2005).
Concerning whether a citizen has standing as a taxpayer, this Court has stated:
"It is well settled that a taxpayer, in certain situations, has standing to challenge a proposed illegal expenditure by a state official. See Turnipseed v. Blan, 226 Ala. 549, 552, 148 So. 116, 118 (1933) (recognizing 'the right of a taxpayer to maintain a suit in equity to restrain an officer of a city or county from disbursing funds without statutory authority or under an unconstitutional statute' and holding that the same right applies in the context of suits in equity against state officers (emphasis added) ); Goode v. Tyler, 237 Ala. 106, 109, 186 So. 129, 131 (1939) ('[T]his Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds.' (emphasis added) ); Zeigler v. Baker, 344 So.2d 761 (Ala. 1977) (upholding an order of the trial court granting the taxpayer-plaintiff an injunction enjoining the comptroller, the finance director, and the treasurer of the State from making payments from public funds under the authority of an unconstitutional act)."
Beckerle v. Moore, 909 So.2d 185, 187 (Ala. 2005).
Additionally,
"[i]n a long line of decisions this Court has recognized the right of a taxpayer to challenge, either as unconstitutional or as not conforming to statute, the expenditure of public funds by county officers. Court of County Revenues v. Richardson, 252 Ala. 403, 41 So.2d 749 (1949) ; Poyner v. Whiddon, 234 Ala. 168, 174 So. 507 (1937) ; Thompson v. Chilton County, 236 Ala. 142, 181 So. 701 (1938) ; Travis v. First Nat. Bank of Evergreen, 210 Ala. 620, 98 So. 890 (1924) ; Reynolds v. Collier, 204 Ala. 38, 85 So. 465 (1920). The right of a taxpayer to challenge the unlawful disbursement of state funds likewise is unquestioned. Goode v. Tyler, 237 Ala. 106, 186 So. 129 (1939) ('... this Court is committed to the doctrine that a taxpayer may maintain a suit in equity to restrain a state officer in the unlawful disbursement of state funds.'); Hall v. Blan, 227 Ala. 64, 148 So. 601 (1933) ; Turnipseed v. Blan, 226 Ala. 549, 148 So. 116 (1933). The latter two cases dealt with the constitutionality of disbursements, while Goode involved expenditures to be made under purported statutory authority. The Supreme Court of Illinois wrote to this principle in *244 Fergus v. Russel, 270 Ill. 304, 110 N.E. 130 (1915) :
" 'We have repeatedly held that taxpayers may resort to a court of equity to prevent the misapplication of public funds, and that this right is based upon the taxpayer[s'] equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation.' "
Zeigler v. Baker, 344 So.2d 761, 763-64 (Ala. 1977). "[I]t is this liability to replenish the public treasury through the payment of taxes that gives a plaintiff in a taxpayer's action standing." Broxton v. Siegelman, 861 So.2d 376, 385 (Ala. 2003).
"This Court is committed to the proposition that a taxpayer may maintain a bill to prevent a misappropriation of the county funds. Reynolds, County Treas., et al. v. Collier, 204 Ala. 38, 85 So. 465 [ (1920) ] ; Potts v. Commissioners' Court of Conecuh County, 203 Ala. 300, 82 So. 550 [ (1919) ] ; O'Rear v. Sartain, 193 Ala. 275, 69 So. 554 [ (1915) ].
"Borchard in his treatise on Declaratory Judgments, at p. 597, observes:
" 'In most states of the United States, and practically always in American municipalities, a taxpayer is deemed to have sufficient legal interest to prevent by injunction the improper or illegal expenditure of public funds, without invoking the actual or pro forma aid of an attorney general as party plaintiff. A fortiori, therefore, he has sufficient interest to request declaratory relief against such expenditure or activity, whether in the form of a proposed or signed contract, or otherwise....' "
Thompson v. Chilton Cty., 236 Ala. 142, 144, 181 So. 701, 702-03 (1938).
Therefore, generally, "to have standing to bring an action, the plaintiff must have an interest in the outcome of the action and show that he or she has suffered or imminently will suffer an injury." Ingle v. Adkins, 256 So. 3d 62, 71 (Ala. 2017). However,
"taxpayers have standing to seek an injunction against public officials to prevent illegal payments from public funds. This standing is based on the fact that taxpayers have an equitable ownership in the public funds and will be responsible for replenishing the public funds if those funds are misappropriated, and, thus, a taxpayer suffers an injury when public funds are illegally spent."
Id.
In the present case, according to the complaint, the remaining plaintiffs-Relf and Ellis-brought this action in their capacities as "tax-paying resident[s] of Montgomery County, Alabama." Further, the complaint states that Relf "is employed by the Montgomery County Board of Education as a Child Nutrition Program Manager at Chisholm Elementary School" and that Ellis "is employed by the MCBOE as a teacher at Sidney Lanier High School." Nowhere in the complaint, in the plaintiffs' appellate brief, or elsewhere do the plaintiffs allege that they will personally suffer any specific " 'actual, concrete and particularized "injury in fact." ' " Cedar Bluff, 904 So.2d at 1256 (quoting Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, LLC, 890 So.2d 70, 74 (Ala. 2003) ). Thus, to have standing, the plaintiffs must rely on their status as "tax-paying resident[s] of Montgomery County, Alabama."[3] However, the challenged action-the *245 sale of Georgia Washington Middle School-would not be an expenditure. Instead, the sale of Georgia Washington Middle School would bring money into the public treasury that tax-paying residents of Montgomery County are responsible for replenishing. Therefore, the plaintiffs will not suffer an injury as taxpayers; thus, they do not have standing as taxpayers to challenge the sale.
To support their argument that they have standing as taxpayers, the plaintiffs quote Island Equipment Land Co. v. Guam Economic Development Authority, 474 F.2d 753 (9th Cir. 1973), which in turn cites City of Bessemer v. Huey, 247 Ala. 12, 22 So.2d 325 (1945). Island Equipment Land Co. states:
"While it is true, as appellees point out, that the traditional rationale for a taxpayer suit is that the taxpayer-plaintiff has sustained pecuniary loss because the challenged government action wasted public funds derived from taxation (see Lyon v. Bateman, 119 Utah 434, 228 P.2d 818, 823 (1951) ; Henderson v. McCormick, 70 Ariz. 19, 215 P.2d 608, 611 (1950) ), it is also true that a clear, if less generally accepted, line of authority supports the theory that a citizen-taxpayer has standing to question the lawfulness of the sale or lease of public property without showing pecuniary harm, and, indeed, even though the sale or lease may be economically advantageous. See, e.g., Lien v. Northwestern Engineering Co., 74 S.D. 476, 54 N.W.2d 472 (1952) ; Colwell v. City of Great Falls, 117 Mont. 126, 157 P.2d 1013 (1945) ; City of Bessemer v. Huey, 247 Ala. 12, 22 So.2d 325 (1945) ; City of Shreveport v. Kahn, 194 La. 55, 193 So. 461 (1939) ; Hanlon v. Levin, 168 Md. 674, 179 A. 286 (1935)."
474 F.2d at 755.
In Huey, a taxpayer of the City of Bessemer ("the City") sued the City seeking to nullify a lease of the City Hall Auditorium and to enjoin performance of the lease. The issue in Huey was whether "the City of Bessemer, without specific statutory authority, [can] lease the City Auditorium to an individual for private business, viz., a theatre, when it was built with public funds for public and municipal purposes, and while it is being devoted to such uses." 247 Ala. at 14, 22 So.2d at 326. Without any analysis concerning standing, the Court simply stated: "Without doubt the complainant, as a resident and taxpayer of the City of Bessemer, has the right to maintain the bill of complaint." Id. Then, the Court analyzed the issue and held, without specific statutory authority, that the City could not lease the auditorium to a private individual for private use.
Huey stands for the "less generally accepted" view "that a citizen-taxpayer has standing to question the lawfulness of the sale or lease of public property without showing pecuniary harm, and, indeed, even though the sale or lease may be economically advantageous." 474 F.2d at 755. In any event, the issue in Huey was very different than the issue in the present case. In Huey, the City, without statutory authority, was attempting to lease public property to a private entity "for exclusive *246 use as a theatre for the entertainment of the white race only and for no other purpose" when the property had been built with public funds for public use and was being devoted to such use. Huey, 247 Ala. at 13-14, 22 So.2d at 326. In the present case, a public entity is attempting to sell public property to another public entity for a legitimate public use, and it is undisputed that county boards of education have statutory authority to convey their property, see § 16-8-40, Ala. Code 1975. Therefore, Huey is distinguishable from the present case, and we find it unpersuasive.
A taxpayer has standing to challenge the unlawful disbursement of public funds that he or she is liable to replenish through the payment of taxes. In the present case, because the sale of Georgia Washington Middle School would bring money into the public treasury that tax-paying residents of Montgomery County are responsible for replenishing, tax-paying residents of Montgomery County do not have standing as taxpayers to challenge the sale.
Conclusion
Because the plaintiffs did not have standing to bring the present action, the trial court never acquired subject-matter jurisdiction over this case. Accordingly, we dismiss the appeal and order the trial court to dismiss the case.
APPEAL DISMISSED.
Parker, J., concurs.
Stuart, C.J., and Bolin, Main, Wise, Sellers, and Mendheim, JJ., concur specially.
MAIN, Justice, concurring specially.
The main opinion dismisses this appeal because the plaintiffs did not have standing to bring the underlying action. I write specially to express my opinion that, even if the plaintiffs had been able to satisfy the standing requirement, the proposed sale of Georgia Washington Middle School ordered by Ed Richardson, the interim State Superintendent of Education, appears to fall squarely within the broad authority granted the State Superintendent of Education by the Educational Accountability and Intervention Act of 2013, codified at § 16-6E-1 et seq., Ala. Code 1975 ("the EAIA").
An express legislative purpose of the EAIA is to "confirm the authority of the State Superintendent of Education to assume and exercise direct and comprehensive control of the decision making and operational functions of city and county boards of education" upon undertaking an educational intervention. § 16-6E-2(1), Ala. Code 1975 (emphasis added). Section 16-6E-4(5) provides that, "[i]f the State Board of Education approves a resolution authorizing educational intervention, the State Superintendent of Education may exercise plenary authority to make such decisions or take such actions as he or she reasonably deems necessary to correct the deficiencies that led to the request for approval of intervention or that may be discovered in the exercise of intervention authority." (Emphasis added.) Section 16-16E-4(6) provides particularly sweeping authority to the State Superintendent when conducting an educational intervention:
"While a city or county board of education is operating under educational intervention, the State Superintendent of Education or the chief administrative officer shall have the power and authority to act for and on behalf of the city or county board of education and its superintendent in all matters and for all purposes under the Code of Alabama 1975. No decision, action, or undertaking made or approved by the State Superintendent of Education or chief administrative officer shall require the separate recommendation, concurrence, or approval of any city or county board of education or any official thereof in order *247 to be deemed final, valid, or enforceable...."
(Emphasis added.) Finally, § 16-6E-6, Ala. Code 1975, instructs that the EAIA is to be construed to "[p]rovide the State Superintendent of Education or the chief administrative officer with broad discretion and complete authority to make, direct, implement, and enforce decisions, actions, and measures which, in his or her judgment, are necessary and appropriate to the attainment of the objectives of educational intervention and to accord the fullest measure of deference to decisions and actions made by such officials in furtherance of intervention goals and objectives." (Emphasis added.)
In this case, there appears to be no dispute that the sale of Georgia Washington Middle School, if consummated, will provide an influx of nearly $10 million to the general fund of the Montgomery County School System. Given the financial crisis in which the school system finds itself, the decision to sell property unquestionably falls within the State Superintendent of Education's authority under the EAIA.
Stuart, C.J., and Bolin, Wise, Sellers, and Mendheim, JJ., concur.

Richardson previously had served for many years as superintendent of the Department and then as president of Auburn University. He had participated in several school-system interventions throughout the State. Richardson had also served on the Pike Road Education Leadership Council that was responsible for developing a new school system for the Town of Pike Road, separate from the Montgomery County School System, and the Alabama Public Charter School Commission.

As to Stone, the complaint alleged that the Town of Pike Road owed MCBOE $1.4 million, unrelated to the sale of Georgia Washington Middle School. While the underlying litigation was pending, the $1.4 million was paid to MCBOE.

Without any supporting argument, the plaintiffs also cite Ex parte State of Alabama ex rel. Alabama Policy Institute, 200 So.3d 495 (Ala. 2015) ("API"), for the proposition that "a different (and more forgiving) type of standing analysis still applies in at least some sorts of cases involving duties owed by government officials to the public." Plaintiffs' brief, at 26. However, API concerned the rule of public-interest standing, which states that "a relator has standing to bring a petition for mandamus or comparable relief, in the name of the State, seeking to uphold a State statute and to secure performance by respondents of a duty owed to the public." API, 200 So.3d at 515 (emphasis omitted). The present action was not brought in the name of the State; thus, the rule of public-interest standing, as stated in API, does not apply.